# WRAY vs. TUSKEGEE INSURANCE CO.

[ACTION ON BILL OF EXCHANGE BY ENDORSEE AGAINST MAKER.]

1. *Bailment of bank-bills.*—A simple loan or deposit of bank-bills by a banking corporation creates the relation of creditor and debtor between the bailor and bailee, and binds the latter to repay the amount, without interest, on the demand or check of the former, but not to keep and return the specific bills received.

2. *Validity of contract for purchase and discount of bill of exchange by corporation.* In an action on a bill of exchange by a private domestic corporation, having power under its charter "to purchase, discount and sell bills of exchange," but prohibited from making or issuing any bills, bonds, notes or other securities to circulate in the community as money, a plea, averring that the plaintiff procured from a foreign bank a loan or deposit of a large amount of its notes, for the unlawful purpose of issuing and putting said notes in circulation in this State, "and under an express agreement with said bank to redeem said notes as the same should be returned to the counter of said bank by which they were issued;" that plaintiff, with the bank-notes thus obtained, "made discounts, purchased bills, and did other business pertaining to banking," and issued and put said notes in circulation as money; that the bill of exchange sued on was made for the benefit of defendant, "and with the intent to have the same discounted by plaintiff, either with said foreign bank-bills or some other bank-bills, as plaintiff might see fit and proper;" that it was presented at plaintiff's banking-house for discount, "and was then and there accepted and discounted by plaintiff with said foreign bank-bills;" that plaintiff, in thus using said foreign bank-notes in the purchase and discount of said bill, "did emit, issue and put them in circulation in this State;" and that this was the only consideration given by plaintiff for said bill of exchange,—does not show any illegality of consideration in the contract by which plaintiff obtained the bill of exchange; the averments not being sufficient to show the existence of an agency between plaintiff and the foreign bank, within the meaning of section 939 of the Code, nor a violation of the plaintiff's charter.

APPEAL from the Circuit Court of Macon.
Tried before the Hon. S. D. HALE.

THIS action was brought by the Tuskegee Insurance Company, a corporation chartered by the legislature of this State, (Session Acts 1855–6, p. 257,) against Albert G. Wray, and was founded on the defendant's bill of exchange for $1828 80, dated the 17th April, 1857,

addressed to one Joseph A. Jones, payable thirty days after date to the defendant's own order, and endorsed to plaintiff. The defendant interposed two pleas in bar of the action, which were as follows:

" 1. Defendant says *actio non*, because he says that, on or about the 19th January, 1856, D. Clopton, Seaborn Williams, J. W. Echols, S. B. Paine, A. D. Porter and R. F. Ligon procured an act of the general assembly of the State of Alabama to be passed, incorporating the Tuskegee Insurance Company; that afterwards, to-wit, in 1856, the said plaintiff, unauthorized by law, and contrary to the statutes of the State, negotiated with, and procured a large loan or deposit, to-wit, the sum of $50,000, to be made to them by the Farmers' and Exchange Bank of Charleston, an incorporated institution located in the city of Charleston, in the State of South Carolina, in the bills of said bank, for the unlawful purpose of banking, issuing and putting in circulation the said bills of said bank in the community of the location of said plaintiff, under the express agreement with said bank to redeem the said bills as the same should be returned to the counter of said bank by which they were so issued; that under and by virtue of said agreement, said plaintiff did draw from said Farmers' and Exchange Bank $50,000, or other large sum, in the bills of said bank, upon which to do a banking business in the town of Tuskegee, Alabama, where said plaintiff is situated; that said plaintiff, in contravention of the statute laws of Alabama, did emit, issue and put in circulation, in the county of Macon, Alabama, the said bills of said Farmers' and Exchange Bank, with which said plaintiff did make discounts, purchase bills, and do other business pertaining to banking; that said plaintiff afterwards, and during the year 1856, and before the discounting of said bill of exchange in plaintiff's complaint mentioned, in pursuance of such unauthorized and illegal intent, did erect and establish a banking-house in the town of Tuskegee in said county, under the name of the Tuskegee Insurance Company, and did issue, emit and put in circulation, at their said banking-house, the said bills of said Farmers' and

Exchange Bank, to circulate as money, and with said bills made discounts of bills of exchange and promissory notes, and thereby caused said bank-bills to circulate as money in the community in which plaintiff's said banking-house is situated; that on the 17th April, 1857, the said bill of exchange in said complaint mentioned was made for the benefit of this defendant, and with the intent to have the same discounted by plaintiff, either with said bank-bills or some other bank-bills, as said plaintiff should see fit and proper, at plaintiff's said banking-house, so illegally established as aforesaid; that afterwards, to-wit, on the 17th April, 1857, defendant presented said bill of exchange at plaintiff's said banking-house for discount, and said plaintiff then and there accepted and discounted the same in the bills of said Farmers' and Exchange Bank of Charleston, which plaintiff had no proper authority to do. And defendant here avers, that the only consideration for the said bill of exchange, known to him, was in the bills of said Farmers' and Exchange Bank of Charleston, an incorporated institution in the State of South Carolina; that said plaintiff, under the name of the Tuskegee Insurance Company, did emit, issue and put in circulation, in said county of Macon, the said bills of the Farmers' and Exchange Bank of Charleston, when the plaintiff used the same in discounting said bill of exchange; and hence he says, that said bill of exchange was without any consideration, or for a consideration prohibited by law; by means whereof, and by force of the statute in such cases made and provided, said bill of exchange and endorsement thereof were, and are, void and of no effect in law. And this he is ready to verify," &c.

"2. *Actio non*, because he says that said bill of exchange, in said plaintiff's complaint mentioned, was discounted at said plaintiff's counter or office, in the bills of the Farmers' and Exchange Bank of Charleston, a corporation chartered by the general assembly of the State of South Carolina, or in the bills of other banks located and situated without the limits of the State of Alabama, in the regular course of banking, contrary to the statutes of the

State of Alabama; and that the bills, with which said bill of exchange was discounted, were the bills of the Farmers' and Exchange Bank of Charleston, or the bills of other banks situated out of the State of Alabama, and were procured by said plaintiff upon which to bank, and to issue and put in circulation as money in said plaintiff's vicinity in said county of Macon, contrary to the statutes in such case made and provided; wherefore the said defendant says, that said bill of exchange and endorsement thereof were given and made for a consideration prohibited by law, and are void and of no force. All which he is ready to verify," &c.

To each of these pleas the plaintiff demurred, assigning the following grounds of demurrer: "1st, that the facts set forth in each of said pleas are insufficient in law to bar or preclude plaintiff's said action; 2d, that neither of said pleas shows that plaintiff made or issued its bills to circulate as money; 3d, that neither of said pleas avers that plaintiff is or was the agent of a foreign banking corporation, doing a banking business in this State on foreign bank-bills; and, 4th, that the facts stated in said pleas show no violation of law." The court sustained the demurrers, and its ruling is now assigned as error.

GEO. W. GUNN, for the appellant.—1. The facts averred in each of the pleas, when tested by the rules of pleading, show that the plaintiff, though prohibited by its charter from issuing any bills or notes to circulate as money, was, in fact, a bank in disguise, doing a banking business under the name of an insurance company; that it procured bank-notes from a foreign banking corporation for the purpose of carrying on such a business, and used them in the purchase and discount of the bill of exchange sued on. These facts show that the plaintiff's purchase and discount of the bill was illegal—1st, because it was an express violation of its charter; and, 2d, because it was a violation of the statute which prohibits foreign banks from exercising banking privileges in this State, by agency or otherwise.—Code, §§ 939, 940, 1484; Session Acts 1855–6, p. 257; Utica Insurance Co. v. Scott,

19 John. 1; Mayor of Tuskaloosa v. Lacy, 3 Ala. 618; Craig v. Missouri, 4 Peters, 52; Darrington v. State Bank, 13 How. (U. S.) 12; Owen v. Branch Bank, 3 Ala. Rep. 258.

2. A contract which is prohibited by statute, though not declared absolutely void, is illegal, and cannot be enforced in any court.—17 Barbour, 397; 6 Barbour, 398; 3 Barbour, 222; 12 Barbour, 302; 3 Denio, 226; 4 Denio, 63; 14 Johns. 273; 20 Johns. 397; 4 Hill's (N. Y.) R. 424; 4 Comstock, 449; Smith on Contracts, 71; 1 Smith's Leading Cases, 353.

CLOPTON & LIGON, with WM. P. & T. G. CHILTON, *contra.* Construing the pleas most strongly against the pleader, and omitting all argumentative averments and legal conclusions, the material facts averred are—1st, that the plaintiff was incorporated; 2d, that it borrowed banknotes from a bank in Charleston, and, as a term of the contract, agreed to redeem them when returned to the bank at Charleston; and, 3d, that the bill of exchange sued on was discounted by the plaintiff with these or some other foreign bank-notes. These facts, standing alone, or construed in connection with the plaintiff's charter, do not show a violation of any general statute, nor of any provision of said charter.—Duncan v. Maryland Savings Institution, 10 Gill & John. 507; Branch Bank v. Knox & Co., 1 Ala. 148; Bates v. Bank, 2 Ala. 451; Gee v. Life Insurance Co., 13 Ala. 579.

A. J. WALKER, C. J.—The material question presented by the demurrer to the first plea, is, whether the facts stated in that plea show that the bill of exchange sued upon was given for an illegal consideration. The power of the corporation to discount the bill is not disputable, because by its charter it has express authority "to purchase, discount, and sell bills of exchange." Acts of '55 and '56, page 259.

Section 939 of the Code prohibits a foreign corporation, invested with the privilege of banking, from exercising that privilege by agent in this State, except by the

exclusive use of gold and silver coin, and bank-bills issued by the authority of this State. The first plea does not present a transaction violating that statute. It does not aver that the plaintiff was the agent of the foreign corporation, nor does it allege such facts as, *per se*, authorize the legal inference of an agency.

The proviso to section 5 of the plaintiff's charter prohibits it from making or issuing any bills, bonds, notes or other securities, to circulate in the community as money. See, also, Code, §§ 3268, 3269, 1484. It is claimed in argument for the appellant, that an infringement of this proviso is shown by the plea, and that the infringement consisted in an issue of the bills of the Farmers' and Exchange Bank, as the consideration of the bill of exchange. The plea alleges, that the money with which the bill was discounted was loaned to the plaintiff, or deposited with it, by the Farmers' and Exchange Bank. If the bills of the South Carolina Bank were received by the plaintiff on deposit, the plea does not permit us to suppose that the deposit was special, creating the relation of bailor and bailee between the South Carolina Bank and the Tuskegee Insurance Company, and binding the latter to keep and return the specific bank-bills received. On the contrary, the averments of the plea demonstrate, that the bank-bills were received to be used by the plaintiff, and not to be kept for the Farmers' and Exchange Bank. For this reason, and because a general deposit among bankers is not deemed a bailment of specific articles of money to be returned, the plaintiff must be regarded as having received the money to be used by it, without any obligation to return the particular bank-bills.

The deposit with the plaintiff by the Farmers' and Exchange Bank, thus explained, constituted the former the debtor of the latter to the amount of the deposit; creating an obligation to pay upon the demand, or upon the check of the latter, without interest. Such a deposit is a gratuitous loan, and it makes the depositor a creditor, and the depositary a debtor.—Cromwell & Wing v. Lovett, 1 Hall, (N. Y.) 62; Chapman v. White, 2 Selden, 416; Com. Bank of Albany v. Hughes, 17 Wendell, 100;

Barnet v. Smith, 10 Foster, 264; Story on Promissory Notes, 614, § 487.

As the deposit is to be regarded in the light above stated, it is not material to inquire which one of the alternative statements, that there was a deposit or a loan, should be adopted. Upon either alternative, the specific bank-bills received from the Farmers' and Exchange Bank became, *eo instanti*, the property of the plaintiff: they were at the plaintiff's risk; if lost, the plaintiff sustained the loss; and the plaintiff was indebted to the bank to the amount of the bank-bills received.

The fact that the bank-bills were received on loan, or on such a deposit as we understand the plea to allege, affords a *prima-facie* negation that they were issued by the plaintiff. The word "*issue*," when used in reference to bank-bills, is the antithesis of circulation. Chief-Justice Marshall, in his decision in the case of Craig v. Missouri, 4 Peters, 410, treats "*emit*," in that article of the constitution which prohibits a State "to emit bills of credit," as synonymous with "issue." Then, to "issue" bills to circulate as money is to "emit" them—to send them out. It is an act antecedent to the circulation of the bills, and different from it. If the Farmers' and Exchange Bank, by loan or deposit, transferred the property in its bills to the Tuskegee Insurance Company—deprived itself of the ownership of the bills, and made them the property of the plaintiff; and the plaintiff thereby became a debtor to the bank for the bills so received, the bills were issued by the bank itself when they were delivered. When they passed from the bank, and became the property of the plaintiff, they were issued, or emitted; and the subsequent use of them by the plaintiff was a circulation, not an issue of them.

We do not deny, that the deposit or loan might be a simulated transaction, used to disguise a real agency for the issue and putting in circulation at Tuskegee of the bills of the Farmers' and Exchange Bank. The bills could pass from the Tuskegee Insurance Company, acting for the bank at Tuskegee, and the issue of the bills by such an agent would be an issue by the bank itself. But

such is not the case made by the plea.    That case is one
where the bank parted with the property in the bills, and
the insurance company, in using the bills, used its own
property, not the property of the bank; and the bank, in
parting with the bills, did not place them in the hands of
an agent, but emitted them.

The plea does assert that the bank-bills were "issued"
in Tuskegee.   But this assertion is, *prima facie*, incon-
sistent with the other allegation, that they were loaned
or deposited in Charleston by the bank.   It may be that
the two could be reconciled.   They are, however, without
reconcilement, inconsistent; and there is no averment of
any matter which harmonizes them.   We must, therefore,
adopt that construction which allows force to the aver-
ments which militate against the sufficiency of the plea.

Upon the allegations of the plea, the bank-bills must
be regarded as having been borrowed, or received on
deposit, in Charleston.   The plaintiff having by its charter
power, in common with natural persons, to discount bills
of exchange, its use of the bank-bills so received in the
discount of paper would no more be an issue of those
bills, than would the same act done by a natural person.

Whatever may be the tendency of the allegation that
the plaintiff agreed to redeem the bank-bills received
from the bank, that fact, standing alone, is not sufficient
to authorize the legal inference that the use of such bank-
bills by the plaintiff was an issue of them.

The second plea presents no feature necessary to be
considered, after what we have already said, except that
it does not, like the first plea, aver that the foreign bank-
bills were borrowed.   It says that they were procured
"to issue and put in circulation as money in the vicinity"
of the plaintiff.   But the plea does not show that the
issuance and putting in circulation of the bills occurred
in the discount of the paper sued upon.   It does not show
any illegality in the particular transaction.   It may be,
consistently with everything disclosed in the plea, that it
was after the foreign bank-bills were put in circulation,
and returned to the insurance company, that the paper
in suit was discounted.

In order to meet the questions argued by counsel, we have considered this case on the concession to the appellant that the appellee's charter was before the court; but, in so doing, we do not desire to be understood as deciding that it was proper for the court below to have looked to the charter for any purpose.

The judgment of the court below is affirmed.