# Alston v. The State.

*Action by State, on Official Bond of Probate Judge.*

1. *Deposits in bank, general or special.*—A deposit of money in a bank is regarded as a general deposit, in the absence of evidence to the contrary, creates the relation of debtor and creditor, and gives the bank the right to mingle the money with its own funds, and to loan or otherwise use it; while a special deposit creates the relation of bailor and bailee, leaving the right of property in the depositor, and imposing on the bank the duty of returning the original money or thing received.

2. *Same.*—A probate judge having accepted a bank check in payment of a license, payable to the State and county, "or bearer," and deposited it in the bank, where the amount was entered to his credit on account standing in his name, with the words added, "judge of probate, license money;" *held*, that this was merely a general deposit.

3. *Liability of probate judge for money deposited in bank.*—A probate judge has no legal authority to make a general deposit in bank of the public moneys in his hands; and if the money is lost by the failure of the bank, the fact that its solvency and financial credit were at the time undoubted does not relieve him or his sureties of liability.

[Alston v. The State.]

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. JESSE M. CARMICHAEL.

This was an action brought by the State to recover for the breach of the official bond of the appellant, who was at that time, and had been for some time previous, Probate Judge of Barbour county; and was brought against the appellant and Amanda A. Ott. The breach consisted in not paying over to the State Treasurer certain moneys which had been collected by him as the State License Tax from retail liquor dealers. The defendant pleaded the general issue, and the faithful performance of every condition of said bond; and by special plea, that the sum collected had been deposited in a bank in the city of Eufaula which was at that time and had been for many years previous regarded as a solvent bank, and under successful management, and that said bank had failed, and upon defendant's demand for the deposit made by him, the officers of the bank refused to accede to his demand, and, therefore, the defendant says he is not liable for the sum sued for.

The cause was submitted upon an agreed statement of facts, which was substantially as follows;

The defendant Alston was elected Probate Judge of Barbour county in August, 1886. On the 27th day of August, 1886, he executed a bond in the sum of $10,000, conditioned and approved as required by law, with the defendant Amanda A. Ott and certain other persons as his sureties, and was duly qualified as said judge; that on the 1st day of January, 1891, he collected as said Probate Judge, from one Morris the sum of $250 as State license tax for a retail liquor dealer in the city of Eufaula, and also collected the county license tax; that said license tax was paid by personal draft of said Morris on the John McNab Bank in the city of Eufaula; that on the 2d day of January he deposited the said draft in the John McNab Bank, which was placed to the credit of Alston as "A. H. Alston, Judge of Probate, License Money."

The John McNab Bank was a corporation, incorporated under the laws of Alabama, and was and had been for a number of years engaged in doing a large banking business in the city of Eufaula; that it had all the confidence and esteem of the business world, and also of the bankers and merchants of the city of Eufaula; that said Alston had no reason to know or suspect that said bank was embarrassed, nor did he at any time have any intimation thereof, until March 31, 1891, when it was made public that said bank had made an assignment of their assets for the benefit of their creditors; that on the 14th day of April, said Alston demanded of said bank, payment and delivery of said money to him, and the same was refused.

[Alston v. The State.]

Said Alston has made personal demands for said money upon the president and cashier of the bank, and the same has bee refused by each of them. On the 1st day of April said Alston made his regularly quarterly report to the Auditor of all the licenses issued during the first quarter of the year, and at the same time paid to the State Treasurer all the money due by him as Probate Judge to the State for licenses issued by him, except said sum of $250 collected from Morris, which he had deposited in the said bank; that he had attached thereto a certificate of the cashier of said bank, showing that the money had been deposited in the bank.

Upon the introduction of all the evidence, the court at the request of the plaintiff charged the jury as follows: "If the jury believe the evidence, they must find for the plaintiff." The defendant duly excepted to the court's giving this charge, and also excepted to the refusal to give the general affirmative charge in his behalf.

There was judgment for the State for the sum of the license tax, less the commissions allowed the Probate Judge for the collection of the same.

On this appeal by the defendant, the giving of the general charge for the State, and the refusal to give the general affirmative charge for the defendant, are assigned as error.

LAWRENCE H. LEE, and PEACH & EVANS, for appellants, cited *Cumberland v. Pennell*, 31 Amer. Rep. 284; *York County v. Watson*, 40 Amer. Rep. 675; Code of 1886, §§ 638, 3803.

WM. L. MARTIN, Attorney-General, for the State.—Our statutes exact of officers charged with collecting, keeping and paying over the public revenue, the highest care, vigilance and diligence known to the law.—*State v. Houston*, 78 Ala. 576. A public officer is not discharged from liability for public funds deposited by him in bank and lost by reason of the failure of the bank.—*State v. Powell*, 67 Mo. 935; *State v. Moore*, 74 Mo. 413; *Lowery v. Polk County*, 51 Iowa; *Ward v. School District*, 10 Neb. 293; *Inglis v. State*, 61 Ind. 212; *Wilson v. Wincheta County*, 67 Texas, 647; *Havens v. Latham*, 75 N. C. 505; Mechem on Public Officers, § 912; Murphy on Official Bonds, § 200.

WALKER, J.—In such cases as the law prescribes a State or County license to engage in, or carry on any business, or to do any act, the amount required for such license must be paid to the Probate Judge of the County in which it is proposed to engage in, or carry on such business, or to do such act; the money so paid for licenses being part of the revenue of the

[Alston v. The State.]

State or County, as the case may be, and received by the Probate Judge in his official capacity, he is prohibited, under criminal penalties, from knowingly converting or applying any of it to his own use, or to the use of any other person, or permitting another to use any of it; and he must, on the last day of each quarter, pay to the State Treasurer the money received by him for such licenses belonging to the State, and to the County Treasurer the money received by him for such licenses belonging to the County, less the amount of the commissions allowed to him by law.—Code of 1886, §§ 632, 3803, 3805, 633. The plain statutory requirements here referred to exert a controlling influence in the determination of the question presented in this case by the contention that the failure of the defendant Alston to pay to the State certain license money which he collected, and with which he is chargeable as Probate Judge should be excused on the ground that said license money has been lost by reason of the failure of a bank in which it had been deposited at a time when said bank enjoyed the confidence and esteem of the business world and of the embarrassment of which said Alston had no reason to know or suspect until after the failure was publicly announced. Can this excuse avail as a defense to the suit of the State to recover the amount of its license money so lost? This inquiry involves the question of right of the Probate Judge to make the deposit as he did. Alston as Probate Judge accepted payment of the license money in the check of the licensee made payable "to County and State of Ala., or bearer." This check Alston presented to the bank and had the amount thereof put to his credit on an account entered on the books of the bank with "A. H. Alston, Judge of Probate, License Money."

Deposits made with bankers are either general or special. In the case of a special deposit the bank merely assumes the charge or custody of property without authority to use it and the depositor is entitled to receive back the identical money or thing deposited. In such case the right of property remains in the depositor, and if the deposit is of money the bank may not mingle it with its own funds. The relation created is that of bailor and bailee, and not that of creditor and debtor. *Boyden v. Bank of Cape Fear*, 65 N. C. 13; *Dawson v. Real Estate Bank*, 5 Ark. 297; *Lowry v. Polk County*, 51 Iowa, 50; 33 Am. Rep. 114; 2 Am. & Eng. Ency. of Law, 93; 1 Morse on Banks and Banking, §§ 183 *et seq.* When a money deposit is made it is to be regarded as a general deposit unless there is evidence to show that it was the bank's duty, by agreement express or clearly implied, to keep it separate and apart from its own funds and to return that identical money to the de-

[Alston v. The State.]

positor. Money received by a bank on general deposit becomes the property of the bank and can be loaned or otherwise used by it as other moneys belonging to it. The bank becomes the debtor of the depositor and the obligation is satisfied by honoring the depositor's checks to the amount of his deposit. The depositor's claim is a mere *chose in action* for so much money. He becomes a creditor of the bank.—*Bank of Republic v. Millard*, 10 Wallace 152; 2 Am. & Eng. Ency. of Law, 93, 94. The words "Judge of Probate, License Money" annexed to the name of the depositor served to distinguish that particular account and to keep it separate from other dealings he might have with the bank. Moneys deposited on an account kept in that form would be more readily traced, and the bank, perhaps, would be chargeable with notice of the source from which the depositor derived funds which he directed to be credited to him in that way. But the addition of the words referred to would not operate to change the character of the deposit from a general to a special one. There is nothing to indicate that the amount charged against itself by the bank on this account was kept separate or unmingled with its own property. The contrary appears. Manifestly, the bank did not undertake to become the bailee of that license money. The effect of the transaction was simply to substitute one person to another's position as a creditor of the bank to the amount of the check deposited. The maker of the check had no property in the funds of the bank by virtue of his account therewith. The entry of the amount of the check on Alston's account was but a shifting of the bank's liability. So far as Alston was concerned, the bank, by accepting the deposit, merely became his debtor and assumed the obligation to honor his checks to the amount so credited to him.—*Havens v. Lathene*, 75 N. C. 505; *McLain v. Wallace*, 103 Ind. 562; 1 Morse on Banks and Banking (3d Ed.) § 186; 2 *Ib.* § 604. The money of the State was thus turned over to the bank on general deposit and became a part of its funds and subject to its use as any other of its property. This use of the public money by the Probate Judge was without warrant of law. He had no right to convert it to his own use or permit any one else to use it. The deposit was of like effect as a loan of the money. It was an unauthorized use thereof. The Probate Judge by that act voluntarily relinquished his custody and control of this public fund so that he could not reclaim it. When the State demands it his answer is that he no longer has it but has a claim for the amount thereof against an insolvent bank. In view of the statutory provisions above referred to, we think that this answer is wholly insufficient as a

[Alston v. The State.]

defense. The effect of the statutes is to make the Probate Judge the custodian of that money and to prohibit him from permitting another to use it. Whether or not it would have been wise to authorize the deposit of the public funds in banks of reputed solvency was a matter for legislative determination. The legislature has prohibited any such disposition of public moneys as is effected by a general deposit thereof in bank. The courts can not recognize as legitimate and excusable that which the statutes have forbidden. They are without power to dispense with the requirements of the statute though it may be apparent that the defendant did not knowingly violate the law; that, in making the deposit, he was acting under a generally prevailing misapprehension that such disposition of public moneys was authorized; and that he may have honestly thought that it was the safest and most prudent thing to do under the circumstances until the arrival of the time when he was required to make payment to the State. The deposit itself having been unlawful, a violation of an official duty and a breach of the condition of the bond, a defense which necessarily involves reliance upon that act as valid and authorized must unavoidably fail.—*Lowry v. Polk County*, 33 Am. Rep. 114; *Ward v. School District*, 10 Neb. 294; 35 Am. Rep. 477.

It would be outside of the issues in this case to undertake to specify what would be regarded as a discharge by an officer entrusted with public money of the duty to keep it safely until he is required to pay it over. In the case of *The State v. Houston*, 78 Ala. 576, the defense that certain tax money which had not been paid over was taken from the collector's person by a robbery was set up in a suit on the collector's bond. The court there stated the elements essential to the validity of that defense, Clopton, J., delivering the opinion, said: "If, having observed the highest care, vigilance, and diligence to prevent loss, the collector is robbed of money belonging to the State by irresistible force, it constitutes a valid defense to an action on his bond for the recovery of such money. We say *money belonging to the State*, for, if it appears that the specific funds received by the collector have been used or changed for any unauthorized purpose, he becomes *eo instanti* a debtor, and he and his sureties are bound to absolute payment, as for a debt. In such case, subsequent robbery of money substituted for the amount misused, is no defense. The robbery must be of money the property of the State." In the present case, as has been shown, the absolute liability, as for a debt, was fixed upon the Probate Judge and the sureties on his bond by the unauthorized deposit in bank; so that no

question is presented as to what the liability would have been if the Probate Judge had not voluntary relinquished his custody of that license money. In the absence of any specific regulation as to the mode or place of keeping public funds, it would seem that the question as to whether or not the custody over them has been maintained with highest degree of care, vigilance and diligence known to the law, would depend, in a measure, upon the particular situation of the officer charged with the preservation thereof, and upon the existence of means available to him of providing a place of safe keeping. This decision does not involve the assertion that the security afforded by bank vaults may not in any case be availed of by an officer entrusted with the custody of public moneys.

Affirmed.