NATIONAL SURETY CO. v. STATE et al.
(3 Div. 827.)

Supreme Court of Alabama. June 20, 1929.

610

C. O. Stokes, of Ozark, and Ball & Ball, of Montgomery, for appellant.

Charlie C. McCall, Atty. Gen., Thos. E. Knight, Jr., Asst. Atty. Gen., Stokely, Scrivner, Dominick & Smith, of Birmingham, and Sollie & Sollie, of Ozark, for the State.

THOMAS, J. The suit by the state, in equity, was for the recovery for devastavit of public funds or moneys wrongfully deposited in the bank and without surety, whereby the same was lost.

■ Such a bill is not required to allege special grounds for "equitable interference." The statute prescribes the right. Sections 5648, 5649, Code of 1928; Bradford v. State, 201 Ala. 170, 77 So. 696; Id., 204 Ala. 46, 85 So. 435.

■ The making parties respondents the principal on the several official bonds, and respective sureties, did not render the bill multifarious (section 5649) and affect the right of its maintenance in equity (Bradford v. State, 204 Ala. 46, 85 So. 435, State v. Clements, 217 Ala. 685, 117 So. 296). This was necessary that the trial court may determine the respective liabilities of the several sureties, if such there were, as the result of the failure in official duty by the one principal—the county treasurer. The fact of or extent of coliability or right and liability of contribution, as between the respondent surety companies, was determined on the coming in of all the evidence. Eureka Coal Co. v. Louisville & N. R. Co. (Ala. Sup.) 122 So. 169.[1] And the decree was against the principal and surety on the first bond, and not against the surety on the second bond.

In Disheroon et al. v. Brock, 213 Ala. 637, 105 So. 899, it was held:

"In absence of stipulations making bond of public officer retrospective, there can be no liability for default prior to execution.

"In absence of stipulations in bond of public officer making it retrospective, or of estoppel by reason of principal's report or statement for prior term, there can be no liability on bond for default of principal occurring prior to execution of bond."

And the terms of the respective bonds are prospective and effective from the "date of approval" and for the term indicated. The dates of respective approvals of Eason's official bonds by the National Surety Company are: October 11, 1920, judge of probate; October 13, 1920, superintendent of education; November 2, 1921, by the judge of probate, and November 3, 1921, and were for the official term that terminated on September 30, 1924. The bonds of the same county official with the Maryland Casualty Company were approved October 23, 1924, by the superintendent of education for the official term that began on October 1, 1924. The First National Bank of Ozark, where his public funds were deposited, failed on the evening of October 23, 1924, and said public school funds were lost by that failure; the same being on deposit since August 29 or 30, 1924. No public moneys were received by said Eason as school treasurer between said dates last indicated. However, that official made several drafts for amounts that aggregated from $6,000 to $7,000, that were paid by the bank preceding and to the date of October 15th.

It is insisted, when the bank failed, Eason, treasurer, had to his credit $21,628.41. After the failure, that official recovered $1,093.-10, which fixed the sum lost to the state at $20,535.23. The evidence shows that the last-named sum could not have been paid before the failure of the bank, or after August or September, 1924.

In Bradford v. State, 204 Ala. 46, 85 So. 435, it is said: "The test of liability here is: (1) Was the county treasurer of public school funds authorized by law to receive such funds? (2) Was Bradford such county treasurer when he received them? And (3) did he receive them by virtue of his office or under color thereof? The first two propositions are not contested; and the mere statement of facts, we think, is all that is necessary to show that these funds came into Bradford's hands as county treasurer of public school funds, by virtue of his office or under color thereof. Mobile County v. Williams, Judge, etc., 180 Ala. 639, 61 So. 963; [Mason] v. Crabtree, 71 Ala. 479. The funds upon which the several warrants were drawn were the public educational funds appropriated and set apart to Marshall county," etc. Such were the funds made the subject of the present suit.

■ It is certain from the evidence that the deposits made by and as the "county treasur-

---

[1] Ante, p. 286.

er of school funds" with the bank in question were those of a general deposit, and created the relation of debtor and creditor as affecting that subject-matter. National Comm. Bank v. Miller, 77 Ala. 168, 54 Am. Rep. 50; Alston v. State, 92 Ala. 124, 9 So. 732, 13 L. R. A. 659; Montgomery County v. Cochran (C. C. A.) 121 F. 17; Curtis v. Parker & Co., 136 Ala. 217, 33 So. 935; Clisby v. Mastin, 150 Ala. 132, 43 So. 742, 124 Am. St. Rep. 64; Henry v. Bank, 63 Ala. 527; Wray v. Insurance Co., 34 Ala. 58. It is further declared in this jurisdiction that public funds being placed in a bank—not a designated depository—as a general deposit and without required surety, or in violation of law, constitutes a devastavit or conversion of such moneys or funds. The sureties of such official so acting in making that deposit are liable for a loss of such public moneys, etc., occasioned by the deposit in question. McPhillips et al. v. McGrath et al., 117 Ala. 549, 23 So. 721; Clisby v. Mastin, supra; Moody v. Jacobs, 211 Ala. 291, 100 So. 467; State v. Houston, 78 Ala. 576, 56 Am. Rep. 59.

It has been further declared that the statutes that obtain are read into official bonds, and they are conditioned as required by the statute. Barnes v. Hudman, 57 Ala. 504; U. S. F. & G. Co. v. U. T. & S. Co., 142 Ala. 532, 38 So. 177; Searcy v. Cullman County, 196 Ala. 287, 71 So. 664; Hannis Dist. Co. v. Lanning, 191 Ala. 280, 68 So. 137; American Book Co. v. State, 216 Ala. 367, 371, 113 So. 592. Since the Alston Case, supra, the statute has been amended (section 3973, Code of 1928), as we will later indicate. Statutes of application are Acts Sp. Sess. 1907, p. 162, § 1, amending section 4668, Code of 1896; section 3973, Code of 1928. Moody v. Jacobs, 211 Ala. 291, 100 So. 467.

We should say distinction must be made as to deposits duly entered with county depositories to the credit of the owner or beneficiary of such moneys, and deposits made generally by the official to his credit, as affecting liability for the loss of such funds by the bank's failure.

As we have indicated, the bill was filed, and as amended was maintained, by the state of Alabama in behalf of Dale county and its school districts in interest, against the county treasurer of school funds and the two surety corporations. Eason, the treasurer, and the two surety companies, each denied liability. The surety companies made their answers cross-bills, alleging liability against the other, or coliability and contribution. The trial court dismissed both cross-bills of sureties, adjudged that neither the state nor the first surety, National Surety Company, was entitled to recover from the surety on second bond, Maryland Casualty Company, and that recovery was awarded by the decree for the full amount of the treasurer's default against the National Surety Company occurring under the first bond.

The state did not appeal; and the appeal before us is only by the National Surety Company. The state is therefore bound by the decree against it for the Maryland Casualty Company, the time for appeal under the statute having expired.

The provisions of section 3973, Code of 1923, as indicated, were under the subject of embezzlement by public officers, and exempt said officers from *criminal liability*, for depositing the revenues of the state or county in a bank in "good faith" who require and take from the bank "good and sufficient security." It will be noted that this provision of the statute does not exempt from civil liability. The decisions citing or construing that amendment are not to the contrary. Gerald v. Walker, 201 Ala. 502, 505, 78 So. 856; Moody v. Jacobs, 211 Ala. 291, 100 So. 467; Lacy v. State, 13 Ala. App. 212, 68 So. 706; Ex parte Lacey, 193 Ala. 677, 69 So. 1018; Ex parte Cowart, 201 Ala. 55, 77 So. 349; Clisby v. Mastin, 150 Ala. 132, 43 So. 742, 124 Am. St. Rep. 64.

Acts 1915, p. 348, abolished the office of county treasurer and provided that the general funds of the county be deposited in such an incorporated state or national bank as the board of revenue or court of county commissioners may designate to be the depository in lieu of the treasurer, or, where authorized, as by section 5 of the act, designate some individual who may act as treasurer of such county. This act applied to the county's general funds in counties of 50,000 or less population. And it was made the duty (subsection 1, § 211, Code of 1907) of the county treasurer to receive and keep the public monies of the county and disburse the same according to law. The amendment of this subsection by Act Sept. 29, 1919, p. 860, § 1, made no substantial change, and was codified in section 303 of the Code of 1923.

The effect of the act of 1911 was to provide for the office of county treasurer of public school funds in the several counties (Gen. Acts 1911, p. 498), and required that official to "faithfully keep the same separate and apart from any other funds or property whatsoever." This statute excluded the right of what is termed a general deposit in a bank.

We will now indicate the county treasurers or depositories in lieu thereof, under subsequent statutes, had not the control and disbursement of the public school funds, but that duty was imposed on a county treasurer of public school funds. Acts 1915, pp. 281, 282, provided for a county board of education, placed on them the duty of electing a county treasurer of public school funds, and gave them the "control of the public school funds * * * as provided by law." And this public policy was continued by subsequent enactments of the Legislature.

Acts 1919, pp. 567, 582, art. 5, § 6, provided for the election of a treasurer of school funds.

Article 14 provided who shall give a surety bond in twice the probable sum of public moneys which he shall have on hand at any one time and to be fixed and approved by the State Board of Education. School Code 1924, arts. 5 and 14; School Code 1927, § 295 et seq. And the complete educational system thus provided still prevails. Vaughan v. McCartney, 217 Ala. 103, 115 So. 30; Shanks v. Winkler, 210 Ala. 101, 97 So. 142; Board of Education v. Blan, State Auditor, 218 Ala. 665, 120 So. 145.

The proof shows that the First National Bank of Ozark was not a county depository when the deposits in question were made in that bank by or to the credit of "J. A. Eason, Treasurer D. C. S. Funds," and said deposits were not thereafter available as such public funds, or at the end of the term of the treasurer on September 30, 1924. The latter had not the right to make deposit of said public funds in that bank and keep the same there to the end of said term, unsecured and not available as such special fund and purpose to which it may by law be expended, and in so doing was guilty of a devastavit. This was during the term of office of Eason as treasurer of rural "school house funds," or as treasurer of school "district tax," or treasurer of "public school library tax," or, as the case was, for that term ending with September 30, 1924. He and the National Surety Company (on his official bond for said term) were bound therefor, since the evidence shows that no part of the funds deposited with the First National Bank of Ozark *came into the hands* of said treasurer, nor was the whole sum available to him as county school treasurer under his new term of office.

It follows that the loss by unlawful or unauthorized deposit, as indicated, was not a breach of Eason's official bond during the second term, or of his failure to make settlement with himself of his previous breaches of official duty or devastavits committed or permitted during his first term of office. No part of those public funds came into the treasurer's possession during the suretyship of the Maryland Casualty Company; hence that company is not liable for breaches of duty as to, or devastavits committed of school or public funds during the first term of that treasurer's office.

The record shows that the amounts of the checks drawn after October 1, 1924, by that treasurer, were properly disbursed by him as required by law. It is also proper to observe that, before the second bond of the treasurer was approved by the superintendent of education on October 23, 1924, the First National Bank of Ozark closed its doors by failure, and thereafter only dividends duly declared could have been disbursed; and there was no failure as to this, for the reason that no dividends were declared and made available.

The fact that the application for the second bond stated that public funds coming into the hands of such official would be deposited with the First National Bank of Ozark, contrary to the designation of any other bank as a depository, without action or deposits thereunder, could not subject the Maryland Casualty Company to liability on its bond. The proof is without conflict that no such deposits were thereafter made. The decree of the trial court was against the state as being in favor of the Maryland Casualty Company, and the state has not appealed. Hence the decree of the trial court is correct in respect to its holding of nonliability, in any event, of the Maryland Casualty Company.

What, then, is the liability of Eason and the National Surety Company to the state as to said public moneys or funds? The Ariton school fund of about $14,000 did not primarily or actually come into Eason's possession or control as treasurer of Dale county. It is insisted that he did not actually receive and deposit that fund, in that it was received by the First National Bank of Ozark, and by it transmitted or deposited in New York before Eason, as treasurer, knew that it was in the possession of said First National Bank. The act of that school treasurer was, August 30, 1924, to receive the deposit or passbook entry of these funds, though placed on deposit through financial and banking agencies within and without the state of Alabama; that is to say, effectuated in a sale of Ariton school bonds through Ward-Sterne & Co., of Birmingham, Ala. The draft was signed by Eason, and the First National Bank "just gave me [him —Eason, treasurer] the deposit slip for the draft for $14,000." This was the shorthand rendition of the conclusion and payment to that official of the proceeds of the Ariton school bond sale. It is otherwise stated by that witness:

"Q. Did the $14,000 go into that bank for which the $14,000 deposit slip was issued? A. They issued me a deposit slip for that amount; yes, sir.

"Q. For the $14,000—they entered both of those items upon your passbooks also, did they not? Look at your passbooks and see, please. A. I don't think so; I don't recall. The $400 item and the $7,000.77 was put on the passbook.

"Q. And the $2,700 is part of the $7,000? A. Yes, sir.

"Q. But you got only a deposit slip for the $14,000? A. Yes, sir.

"Q. You accepted the deposit slip? A. Yes, sir.

"Q. You accepted the entry on the passbook? A. Yes, sir."

The evidence of Dowling, cashier of the First National Bank of Ozark, shows this was on August 30, 1924 (this date is fixed by witness Crane, an accountant; August 29, by Hyatt), and that a Birmingham bank re-

mitted for the sale of these bonds to a New York bank for the credit of the First National Bank of Ozark, which New York bank (Chemical National Bank) was the correspondent of said Ozark Bank, and credited to the school treasurer.

It will be unnecessary to follow in detail the $7,000.77 to the credit of the Pinckard school building during the month of August, 1924. It was placed by the school officials to his credit, and he received the "deposit slip." This item of credit was duly entered upon the passbook of said official as school treasurer. The fact that other county officials participated in the sale of the bonds, and the proceeds thereof came into the hands of Eason as school treasurer, and he acquiesced in the deposit and credit thereof with the bank, was a receipt of public moneys before October 1, 1924, and protected by the terms of the first bond.

No presumption arises, against sureties on the second official bond, that moneys which came into the principal's official possession under a former bond were in his hands when the second bond was approved. Each case and obligation must be governed and ruled by its governing facts and circumstances. McPhillips v. McGrath, 117 Ala. 549, 23 So. 721, Miles v. Meade, 191 Ala. 81, 67 So. 1012.

After the bank failed it was ascertained that the treasurer was entitled to credits of $1,056 and $37.17. Deducting this sum of $1,093.18 from the total balance of $22,263.55, in the bank when it closed, would leave the amount due the state for the use of 'the several county school funds in question in the sum of $21,170.37, with legal interest thereon from September 1, 1924. This liability on the bond is ascertained, and subject to the accrual of interest, as of the date when the devastavit occurred. Said sum is $29,309.34. For this sum judgment is rendered against appellant. As corrected, the judgment of the circuit court is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.