# Jack *v.* Moore.

*Petition for Mandamus to Probate Judge, refusing Warrant on County Treasurer, on Allowed County Claim.*

1. *Allowance of claim against county; mandamus to probate judge.*—When a claim against the county has been audited and allowed by the Commissioners Court, the issue of a warrant on the county treasurer, for its payment, is a ministerial duty devolved by law on the probate judge; but that court has no power to compel him to draw his warrant, and the remedy to compel his obedience, the order not being void on its face, is a *mandamus* from the Circuit Court, at the suit of the person in whose favor the claim is allowed.

2. *Claims against county; employment of attorney.*—The statutes do not specify all the claims which are proper charges against the county : being a body corporate, with the capacity to sue and be sued (Code, § 815), it necessarily has the power to employ counsel; and the compensation of counsel so employed is a proper charge against the county.

3. *Same; contest as to location of county-site; employment of attorney.*—A special election having been held, under a local law, to determine the location of the county-site; and the commissioners who were charged with the duty of locating the site, as determined by the result, having been involved in litigation arising out of the discharge of their official duties; the Commissioners Court, acting in the interest of the county, may employ counsel to represent and defend them, or may adopt and ratify their employment of counsel for themselves; and the allowance of a claim against the county, in favor of the counsel employed by the commissioners, for their professional services rendered, is an adoption and ratification of their employment.

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. W. B. WOOD.

This case originated in a petition filed on the 5th March, 1879, duly verified by affidavit, by W. P. Jack and John F. Jack, asking a *mandamus* against Hon. JAMES E. MOORE, the probate judge of said county, commanding and requiring him to draw his warrant on the county treasurer, in favor of the petitioners, for the payment of a claim which had been allowed by the Commissioners Court of the county. The order allowing the claim, which was made an exhibit to the petition, was passed at the regular August term of said court, 1878, and in these words : "*Ordered by the court*, that W. P. Jack and

John F. Jack be, and they are hereby, allowed the sum of $250, for professional services as attorneys in the Probate, Circuit, and Supreme Court, in 1877–8, in a case of contest of election, wherein J. K. Clarke and A. W. Daviney were plaintiffs, and W. P. Jack *et al.* were defendants, in locating court-house of said county; to be paid out of the county treasury, as by law directed."

The contest referred to in the order grew out of a special election, which was held in said county, under the provisions of an act of the General Assembly approved on the 24th January, 1877, to determine the location of the county-site.—Session Acts 1876–7, pp. 185–9. By the 5th section of the act it was provided, that in the event the result of the election should be in favor of the removal of the county-site to the centre, or within three miles thereof, and its permanent location there, W. P. Jack and six other persons, specially named, should act as commissioners to select the particular site for the erection of the court-house and jail, and report their action to the Commissioners Court. The result of the election, as determined from the returns by the supervisors of the election, was in favor of the removal to "Center," and public notice of the result was given. On the 1st June, 1877, a few days after the result of the election was published, said Clarke and Daviney filed a petition in the Probate Court, seeking to set aside the election, and insisting that the law under which it was held was unconstitutional. Jack and the other locating commissioners were made defendants to this petition, and they appeared and resisted it; but, on the hearing, the probate judge overruled all their objections, held the law to be unconstitutional, and declared the election null and void. The commissioners then removed the proceedings, by *certiorari*, into the Circuit Court, where judgment was rendered, sustaining the validity of the law, and quashing the proceedings had in the Probate Court for want of jurisdiction; and on appeal to this court, by said Clarke and Daviney, the judgment of the Circuit Court was affirmed, as shown by the report of the case (*Clarke & Daviney v. Jack et al.,* 60 Ala. 271–80), where the facts are stated in full.

The petition in this case, after stating the main facts relating to the election and the contest thereof, thus proceeded: "After service of said petition of Clarke and Daviney on said commissioners, members of said locating commission employed said William P. Jack and James W. Bolton, as attorneys to defend them in said cause; and at a large meeting of the citizens of said county, near Center, the said W. P. Jack was employed by members of the locating commission as leading counsel, with power to associate other counsel with

him and said Bolton; and pursuant to said authority, John F. Jack and Walker & Shelby were associated with them. Your petitioners, in conjunction with said other counsel, conducted said cause, on behalf of said commissioners, who had in charge the interest of said county in said suit, to a successful issue; and the Commissioners Court of said county, recognizing the professional services of your petitioners as aforesaid, and as compensation for the same, and further recognizing it as a just, legal, and equitable claim against said county, at the regular August term of said court," made the order above copied; and that the probate judge refused to draw his warrant on the treasurer for the payment of the claim, as it was his duty to do.

The probate judge demurred to the petition, assigning eight special grounds of demurrer, in substance as follows: 1st, that the Circuit Court had no jurisdiction to grant the relief prayed; 2d, that the petitioners showed no right to the relief prayed; 3d, that the order allowing the claim was void: 4th, that the claim was not a proper charge against the county, but was the personal debt of the locating commissioners; 5th, that the petitioners' remedy, if any right they had, was by an action at law on the defendant's official bond. The court sustained the demurrer, on several grounds, and dismissed the petition; holding that the Commissioners Court had power to compel obedience to its order, if valid, and therefore the Circuit Court should not award a *mandamus*; that the petitioners' claim was not a proper charge against the county, and that the order allowing it was void.

The judgment on the demurrer, and the refusal of the *mandamus*, are now assigned as error.

WATTS & SONS, for appellants.—The order allowing the petitioners' claim is valid on its face, and creates a *prima-facie* right to a warrant on the county treasurer.—*Comm'rs v. Moore*, 53 Ala. 28. The demurrer admits the facts stated in the petition; and unless the facts stated show that the court had no power to allow the claim as a charge against the county, the right to have it paid necessarily follows. Counties are corporations, with power to sue and be sued (Code, § 815); and this involves the power to employ counsel to prosecute or defend. In the employment of counsel, the county can only act through its agent, the Commissioners Court, who must judge of the necessity, and of the value of the services rendered; and having the power to employ counsel in the first instance, the court may recognize and pay for professional services rendered without antecedent employment.—Dillon on Mun. Corp. §§ 385, 399; *Memphis v. Adams*, 9 Heiskell, 518.

BRICKELL, C. J.—When a party has a clear legal right to demand from a ministerial officer the performance of a specific duty, and there is not a defined, adequate legal remedy, *mandamus* from the proper tribunal is the appropriate remedy to compel performance. The issue of warrants on the county treasury, in payment of claims the Commissioners Court have allowed and ordered to be paid, is a ministerial duty imposed on the judge of probate, in the performance of which he has no discretion, unless the order of allowance is of itself, and on its face, an absolute nullity, imposing no duty, and conferring no rights. When on its face the allowance of the claim is valid, and is the instrumentality for the payment of a claim chargeable on the county, he is without discretion—his duty is plain and simple, to issue the warrant on the county treasury, in obedience to the order of allowance; and if he refuses, the Circuit Court of the county, having a general jurisdiction and superintending power over all inferior tribunals, and officers exercising ministerial power within its territorial limits, can by *mandamus* compel obedience. The jurisdiction and power of the Commissioners Court is exhausted by an allowance of the claim, and the order that a warrant on the treasury issue for its payment. If the judge of probate refuses obedience, they can not punish him—an integral part, the presiding judge and clerk of the court—for a contempt, or for neglect to perform his duty; nor have they any remedy to correct his negligence or obstinacy. The remedy is in the general jurisdiction and superintending power of the Circuit Court of the county.

It is true, that no claims are chargeable on the county treasury, nor can be paid therefrom, except such as the law imposes on the county, or empowers it to contract. No officer of the county can charge it with the payment of other claims, however meritorious the consideration, or whatever may be the benefit the county may derive and enjoy from them. But it must not be understood that the statutes enumerate every claim chargeable on the county, and that no other claims than such as are enumerated can be charged upon it. The county is a body corporate, compelled or subject to suit as a corporation, in several instances expressed in the statutes; and yet there is no express provision empowering it to employ and compensate counsel for the prosecution or defense of suits. The employment is a necessity, for an appearance by person is a mere impossibility. Compensation of counsel is a claim upon the county, which it lies within the jurisdiction of the Commissioners Court to allow, and order paid from the county treasury. Of what avail would be the capacity of the county to sue, if counsel could

not be retained for the prosecution of the suit? What security has the county against wrongful, vexatious suits, founded on unjust demands the Commissioners Court refuse to allow, or are lured into an improvident allowance of, if counsel can not be employed to defend? The employment of counsel is a necessary incident to the capacity of suing and being sued; and compensation to them is a just claim against the county.

The Court of County Commissioners has control of all the property of the county. A duty resting upon them is the erection and keeping in repair the court-house and jail; and for these purposes, they may make all necessary contracts. Code of 1876, §§ 817–18–20–23. The location of the county-site—the place at which the court-house and jail are to be erected and kept in repair, the courts of the county to be open, and all county offices established—is the matter not peculiarly of individual, but of common concern to all the citizens of the county. When in reference to it litigation arises, it can rarely assume a form in which the Commissioners Court, the representative of the corporate power of the county, legislative, judicial and executive, can stand as an idle, indifferent spectator, whatever may be the particular interests or views of the individuals composing it. These interests and views should be abnegated, and the interests of the county alone regarded; and the highest exponent of these interests is the will of the majority of the electors, expressed at the ballot-box according to law, when its expression is by law required.

The litigation in which the commissioners for the location of the county-site for Franklin were involved, was in consequence of their obedience to the law from which they derived authority. In the performance of a public duty, it was competent for the Commissioners Court to have employed counsel to defend the proceedings instituted against them. The county was, in fact, the real party in interest, and not the commissioners, who were the parties by name. Though these commissioners, without authority from the Court of County Commissioners, employed the counsel, their act was capable of ratification by the county commissioners. They could adopt it as their own, if they deemed it prudent so to do. The allowance by the court of the claim of the attorneys for compensation, and the order for its payment, was a ratification of their employment, acting retrospectively—placing the court and the county in the same relation to the attorneys in which they would have stood if the employment had proceeded originally from the court.

The judgment is reversed, and the cause remanded.