(87 South. 785)

**YIELDING v. BALL et al.** (6 Div. 269.)

(Supreme Court of Alabama. Feb. 19, 1921.)

Counties ⬅73—Can pay operating expenses of automobiles used by officers in performance of duties.

Under Act Sept. 14, 1915 (Loc. Acts 1915, p. 374), giving officers of a county salaries and expenses instead of their fees if the amount of the fees paid in by them is sufficient for that purpose, section 3 of which act authorizes the board of revenue to establish rules and regulations for the conduct of such officers made necessary by changing the compensation, the board had authority to pay for the maintenance of county automobiles used in the performance of their official duties by the sheriff, coroner, tax collector, health officer, and humane officer, all of whose duties as fixed by statute required them to travel about the county.

Appeal from Circuit Court, Jefferson County; Dan A. Green, Judge.

Suit by W. J. Yielding against D. C. Ball and others, as members of the Board of Revenue of Jefferson County, to enjoin them from paying certain expenses incident to the operation of automobiles by the officers of the county. From a decree denying the injunction, complainant appeals. Affirmed.

J. L. Drennen, of Birmingham, for appellant.

Injunction is the proper remedy. 157 Ala. 327, 47 South. 703; 189 Ala. 198, 66 South. 98; McQuillin, Municipal Corporations, §§ 2590 and 2596. The county was without authority to pay the bills. 189 Ala. 198, 66 South. 98; 196 Ala. 481, 71 South. 704. Such statutes are strictly construed. 4 Ala. App. 254, 59 South. 69.

W. K. Terry and Burgin & Jenkins, all of Birmingham, for appellees.

In the absence of statutory inhibition, a county has the same power to contract and be contracted with as an individual. 45 Ala. 242; 53 Ala. 25; 66 Ala. 188; 175 Ala. 391, 57 South. 823; 193 Ala. 528, 68 South. 971. Under Loc. Acts 1915, p. 374, and Gen. Acts 1915, p. 382, the board ought to and did properly pay the charges complained of. 196 Ala. 481, 71 South. 704.

MILLER, J. A resident taxpayer, over 21 years of age, of Jefferson county, W. J. Yielding, files sworn bill seeking injunction to prevent the allowance by the members of the board of revenue of that county of certain claims for gasoline, weed chains, repairs, and parts of automobiles furnished for automobiles owned by the county. The bill avers that these automobiles were used respectively by the sheriff, coroner, tax collector, humane officer, health officer of the county; that the claims were unauthorized by law; and that a payment of them would be an ultra vires act of the respondents; and they should be enjoined from so doing.

The respondents filed sworn answer, giving in detail circumstances and facts to show a necessity for these expenditures by and for these officials to enable them to perform the duties of their respective offices, and averring an express or implied authority of law for

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the allowance of these claims for that purpose.

The present sheriff and tax collector of Jefferson county were placed on a salary by Local Act of 1915, p. 374, approved September 14, 1915. Prior to this time these officials received fees and commissions from their respective offices for services rendered therein. Now these fees and commissions are collected by them, and paid into the county treasury.

Section 4 of said act states in substance that the salary or allowance to the county officer shall not exceed the amount of the fees, charges, and commissions earned and collected and paid by him into the county treasury during his term of office, less the "cost of the conduct and operation of such office," and shall be paid for by the county. It also states that "the premium on the bond of such officer shall be considered as part of the expenses of the operation of such office."

The annual salary of the sheriff and his deputies, and tax collector, together with "the cost of the conduct and operation of such offices," respectively, including premiums on their bonds, must not during the term of office exceed the amount of the fees, charges, and commissions earned and collected by such officer and paid by him into the county treasury during that time. The amount of fees, charges, and commissions earned, collected, and paid into the county by the sheriff during his term of office must not exceed the amount paid out in salaries, premiums on bonds, and cost of the conduct and operation of the office during that time. This same rule of law applies to the office of tax collector.

The income during the term from these offices, respectively, must not exceed the amount paid out by the county for them. The office must be no expense to the county. It must be at least self-sustaining. There is no averment in the bill that the payment of these claims for these officers will make them exceed the income therefrom to the county during their terms. This act fixes the annual salary of the sheriff at $6,000, and the tax collector at $4,000.

Section 7, General Acts 1915, p. 382, approved September 10, 1915, reads that:

"The board of revenue may appropriate necessary money for the legal expenses of the sheriff's office not otherwise provided for, which said money shall be paid out of the sheriff's fund of the county."

The sheriff's fund, by the act of September 14, 1915, supra, goes into the general fund of the county.

Section 5870 of the Code of 1907 in part declares the duties of the sheriff to execute and return, with due diligence, the process and orders of the courts of record of this state and of officers of competent authority. This requires prompt action, day or night, and quick and ready transportation to different parts of the county.

Section 2169 of the Code of 1907 requires the tax collector shall attend at a voting place in each election precinct in the county, once in each year, from 8 o'clock a. m. to 4 o'clock p. m. for the purpose of collecting taxes of such precinct. This from necessity keeps the collector from his office and requires him to travel from place to place during his rounds in collecting these taxes.

Section 3 of said Local Act of September 14, 1915, states:

"The board of revenue is authorized to adopt rules and regulations for the conduct and operation of all such officers made necessary by changing the method and basis of compensation under this act."

The humane officer is appointed under authority of General Act of 1911, p. 112. This law gives the court of county commissioners the discretionary right to employ such person and fix his compensation. His duties are specially to enforce all laws for the prevention of cruelty to animals, and all laws for the prevention of cruelty to children. He has the authority of a deputy sheriff. Act of 1915, p. 949, makes it the duty of boards of revenue of counties of more than 200,000 inhabitants to appoint such officer. Sections 2 and 7 of an act approved September 16, 1915 (Gen. Acts 1915, p. 560), place large duties on this officer, requiring him to go anywhere in the county to bring offenders before the juvenile court, making transportation necessary for him. The duty is also placed upon him to take the convicts from the jail to the convict camps almost daily.

The act approved September 25, 1915 (Gen. Acts 1915, p. 858), fixes the annual compensation of the coroner at $3,000 in Jefferson county. The fees and perquisites belonging to the office shall be paid into the coroner's fund in the county treasury; and "the salaries, compensation and expenses of the coroner's office" shall be paid out of such fund. This coroner's fund has now, by later act, been placed into the general fund of the county. It is the duty of the coroner to hold inquests in different parts of the county, and to perform the duties of sheriff when he (sheriff) is interested, imprisoned, or the office is vacant. This requires him to go over the county, and necessitates an expense of travel to his office.

The health officer of Jefferson county is an all-time officer, is paid an annual salary. He is required to visit the county jail, all convict camps where county convicts are worked, the county almshouse, the county courthouse, and other public buildings belonging to the county, at least once in each month, and perform certain duties in regard to each; and it is his duty to go to different parts of the county to look into all cases of infectious diseases and make reports thereon. Transporta-

tion is necessary for the performance of these duties required of him by law.

The answer shows that the gasoline, repairs, weed chains, and parts furnished, evidenced by said claims · against the county, were used in the cars of the county, and were necessary for them to run; and that said cars were used by the county and said officials thereof for the purpose only of performing their respective official duties. There is no intimation in the bill that the automobiles were used for any other than official purposes in the performance of official duties. If they were the law gives a remedy.

This court held in Ensley Motor Co. v. O'Rear, 196 Ala. 481, 71 South. 704, that the courts of county commissioners or boards of revenue, with general authority over roads and bridges, had the right to purchase an automobile to be used "for the purpose of constructing, maintaining, and inspecting the roads and bridges of Walker county."

Jefferson is a large county, approximately 50 miles in length and 28 miles in breadth, with a population of practically 300;000. It underwent a great change when these officials were placed on a salary and their fees and commissions deposited in the county treasury. It will not be considered for one moment that the Legislature expected them, out of their salaries, to pay their expenses, some almost daily, going to different parts of the county. If so, the salaries of some, if not all, would be practically consumed in such expenses.

When the Legislature directed the board of revenue of Jefferson county to pay "the cost of the conduct and operation of such offices," and "to adopt rules and regulations for the conduct and operation of all such offices, made necessary by changing the method and basis of compensation under this act," it expressly or impliedly authorized them to provide transportation for the officers when in the discharge of their official duties, with the limitations hereinbefore stated, the office to be no expense during the term to the county. The fees and commissions collected therefrom must pay or overpay all expenses of the office.

It being the duty of the county to provide transportation, then that conveyance which will give the best, quickest, and most economical service should be purchased. At this time, the automobile has the preference. Local Acts 1915, p. 374; Ensley Motor Co. v. O'Rear, 196 Ala. 481, 71 South. 704; Gen. Acts 1915, pp. 382, 383; Montgomery County v. Barber, 45 Ala. 242; Commissioners' Court v. Moore, 53 Ala. 25; Board of Revenue v. Merrill, 193 Ala. 528, 68 South. 971; Jack v. Moore, 66 Ala. 188; Montgomery County v. Pruett, 175 Ala. 391, 57 South. 823.

The answer of the respondents disclose that the county owns 21 trucks and 9 automobiles that are used exclusively for the purpose of constructing, maintaining, and keeping up the roads of the county; that there are in daily use 34 automobiles of the county for the sole purpose of performing the official duties of the officers of the county. They have erected on property of the county a garage; and when the automobiles are not in use for the performance of the official duties of the officers, they are stored in the garage. In this garage the county has all necessary articles to repair the automobiles and expert mechanics to do the work; and in this way keeps the cars in running order, and sees that none are used except for legal purposes by proper officials.

In this it appears from the answer that the board of revenue is acting wisely, with economy, and within the implied authority of the law.

The court below properly denied the injunction.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.