(93 South. 453)

## HENRY, County Treasurer, v. HARTSFIELD, Sheriff. (6 Div. 653.)

(Supreme Court of Alabama. March 3, 1922. Rehearing Denied May 11, 1922.)

1. **Sheriffs and constables** ⬤⟼70—**Local act restricting salaries within net earnings of office applicable to sheriff.**

Loc. Acts 1915, p. 375, § 4, restricting salaries of public officers within the net earnings of the office, is applicable to the office of sheriff, and his salary may not exceed the fees, commissions, and charges earned and collected by him and paid into the treasury during his term, less the cost of operating the office.

2. **Counties** ⬤⟼71—**Act restricting salaries within net earnings of office construed.**

Loc. Acts 1915, p. 375, § 4, restricting salaries of officers within the net earnings of the office, and providing that the board of revenue

may pay the monthly salaries "in anticipation of fees actually earned for services rendered," means that, if the officers have actually earned fees and commissions, though not at the time collected and paid into the treasury, in excess of the cost of operating the office, the salaries may be paid, but such salaries may not be paid in anticipation of fees to be earned in the future.

Miller and McClellan, JJ., dissenting.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Motion by J. Chris. Hartsfield, Sheriff of Jefferson County, for a summary judgment against M. V. Henry, Treasurer of Jefferson County, on a warrant issued to him for his salary as such officer. From a judgment for movant, Henry appeals. Transferred from Court of Appeals, under Acts 1911, p. 449, § 6. Reversed and rendered.

Cabaniss, Johnston, Cocke & Cabaniss and W. K. Terry, all of Birmingham, for appellant.

The right to compensation of a public officer is created by law, and not by contract, and no compensation can be recovered, unless provided by law. Mechem on Pub. Off. §§ 855, 856.

J. J. Mayfield, of Montgomery, and Burgin & Bell, of Birmingham, for appellee.

Local Acts 1915, p. 374, do not provide that the officer shall not at any time be paid more money than his office has earned to that date; the time of determining the amount earned, collected, and paid in, as well as the expense of operating the office, is for the entire term of office, which can be known only at the end of that term. The court of county commissioners were authorized to issue the warrant, and the treasurer to pay it. 188 Ala. 423, 66 South. 161; 116 U. S. 131, 6 Sup. Ct. 329, 29 L. Ed. 587; 22 R. C. L. 525.

PER CURIAM. [1] While a majority of the court, in the companion case of Henry v. Wiggins (Ala. Sup.) 92 South. 108,[1] held that the construction of section 4 of the Local Acts of 1915, p. 374, restricting salaries within the net earnings of the office, did not apply to deputies, a majority then held, and now hold, that it applies to the sheriff, and that his salary shall not exceed the fees, commissions, and charges earned and collected by him and paid into the treasury during his term of office, less the cost of the conduct and operation of the office. The record in this case shows that, at the time the payment of the warrant in question was refused by the appellant, the expense of the office, already paid out, was over $30,000 in excess, not only of all fees, etc., paid in, but of all that had been actually earned.

[2] Section 4 of the act provides that—

The "board of revenue may pay the monthly salaries of the officials mentioned in this act in anticipation of fees actually earned for services rendered."

This simply means that, if the officers have actually earned fees and commissions, though not at the time collected and paid into the treasury, in excess of the cost of operating the office, the salaries may be paid, but does not mean that the salaries may be paid in anticipation of fees to be earned in the future. Had the Legislature meant to authorize an anticipation of fees to be earned, it would have said, "in anticipation of fees to be earned during the term," or have used words of like import, instead of saying "fees actually earned for services rendered," meaning, of course, services already rendered and not to be rendered in the future.

The trial court erred in awarding the mandamus; its judgment is reversed, and one is here rendered dismissing the petition.

Reversed and rendered.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

McCLELLAN and MILLER, JJ., dissent.

MILLER, J. (dissenting). This is a motion by Chris. Hartsfield, the sheriff of Jefferson county, for a summary judgment against M. V. Henry, as the treasurer of Jefferson county, for $500, the amount of a warrant issued by the board of revenue for his salary for January, 1922. It was agreed that the warrant was regularly issued February 14, 1922, that the treasurer of the county had general funds in his hands sufficient to pay the warrant when presented to him, and he refused to pay it. The cost of the conduct of the office now exceeds by $30,000, the amount of all fees, charges, and commissions earned, whether collected or uncollected; and "it is agreed that there is now earned, but not collected, fees and commissions by the sheriff's office a sum largely in excess of $500." There was judgment for plaintiff, and the defendant appeals. This judgment is assigned as error.

Section 4 of an act approved September 14, 1915 (Local Acts 1915, p. 375), reads as follows:

"That the amount to be paid any county officer of Jefferson county by way of an allowance or salary, shall not exceed the amount of the fees, charges, and commissions earned and collected by such officer, and paid into the treasury during his term of office less the cost of the conduct and operation of such office, including the premium on the bond of such officer, which shall be considered as part of the expense of the operation of such office, and shall be paid for by the county. Provided that the board of revenue may pay the monthly salaries of the officials mentioned in this act in anticipation of fees actually earned for services rendered."

The board of revenue of Jefferson county is authorized and empowered to provide for the number of deputies of the sheriff, to fix their compensation and to provide how they shall be paid. These deputies shall be selected by the sheriff, and he shall have the right to discharge them at will. Section 3 of said Local Acts 1915, p. 374. This act (Local Acts 1915, p. 374) contemplates that the sheriff must have deputies. That office in that county could not be conducted without them. They are necessary officials for the conduct and operation of the office of sheriff in that county. The act recognizes it. The salary of the sheriff is fixed by the act. The compensation or salaries of the deputies are fixed by the board of revenue. The salary or compensation fixed for each of the deputies by the board of revenue is, of course, a part of "the cost of the conduct and operation of such office." The office could not be conducted and operated efficiently without them, and their compensation is from their necessity a necessary cost of the conduct and operation of the office. Their salaries or compensations are an expense to the sheriff's office, it being necessary to have them to properly conduct and operate the business of the office. Section 3 of General Acts 1915, p. 382, provides that all of these deputies of the sheriff shall enter into bond in the sum of $2,000 payable, conditioned, and approved as is the bond of the sheriff. The oath of office prescribed by the Constitution must be taken by each of these deputies. Section 1480, Code 1907; section 279, Const. 1901. Each of these deputies, when appointed, and qualified, is an official of the county. Ravanaugh v. State, 41 Ala. 399; Andrews v. State, 78 Ala. 483; Gerald v. Walker, 201 Ala. 502, 78 South. 856; Scruggs v. State, 111 Ala. 60, 20 South. 642.

Section 3 of Local Acts 1915, p. 374, authorizes the Board of Revenue "to provide how they (the deputies) shall be paid." They fix the amount of the compensation of the deputies and they provide how it shall be paid, meaning thereby by warrant drawn monthly, quarterly, or annually on the treasurer of the county, as the board of Revenue may determine. The word "how" refers to the time and manner of payment of the deputies, and not to the fund. The general act (section 6, Gen. Acts 1915, p. 382), provides for the payment to be made out of the sheriff's fund, and this local act, by section 4 (Local Acts 1915, p. 374), clearly intends that the salary of the sheriff and the entire cost of the conduct and operation of the sheriff's office shall be paid out of the fees, charges, commissions earned and collected by the sheriff during his term of office, and which must be paid by him to the treasurer of the county, and which is not required to be kept in a separate fund—a sheriff's fund. The sheriff's fund, by the act of September 10, 1915 (Gen. Acts 1915, p. 382), was intend-

ed to be kept by the treasurer separate from the general fund of the county; and the compensation of the sheriff, the deputies, guards, and jailers, sheriff's attorney's fees, and all other "legal expenses of the sheriff's office" were paid out of that sheriff's fund. Four days later, September 14, 1915, by Local Acts 1915, p. 374, it was provided that "the fees, charges, commissions earned and collected by such officer," shall be paid by him into the treasury of the county, and that the salary of the sheriff, "the cost of the conduct and operation of such office, including the premium on the bond of such officer, * * * shall be paid for by the county," and they must not exceed the amount of the fees, charges and commissions earned and collected by such sheriff and paid into the treasury by him during his term of office.

It is clear, certain, and definite that the Legislature intended and purposed by both of said acts—Gen. Acts 1915, p. 382, and Local Acts 1915, p. 374—to make the office of sheriff of Jefferson county self-sustaining during the term of the office of each sheriff, and the salaries or compensation of the deputies were to be a part of the expense of the office. The office must be, during the term of each sheriff, self-sustaining, no expense to the county; the entire expense to the county of running the office during the term must not exceed the income from the office during the term. Yielding v. Ball, 205 Ala. 376, 87 South. 785. The Legislature never intended by either of said acts for the salary of the sheriff or the compensation or salaries of the deputy sheriffs to be an expense to the general fund—an expense to Jefferson county. We should not so interpret them as to place it there. We cannot legislate. This expense of the deputies should not be shifted by this court from the income of the office to Jefferson county. The Legislature placed it on the income of the office during the term of the official. We should let it remain there.

Now the board of revenue is limited under these acts in the number of the deputies, and in the amount of their compensation, by the income of the office during the term of the official, including therein the salary of the sheriff and the other expenses and costs of operating the office. If their salaries or their compensations are to be paid by the county, regardless of the income from the office, and not from the income from the office, then there will be no limitation on the board of revenue as to the number of deputies they may fix, and there will be no limitation as to the amount of the compensations or salaries they may give them. Such an interpretation of these acts is foreign to any idea expressed in them by the Legislature. Such an interpretation of these acts has dangerous tendencies. The Legislature intended that the number of the deputies of the sheriff and the amount of their com-

pensation should rest in the sound discretion of the Board of Revenue, provided they must not allow the salary of the sheriff, the compensation of the deputies, the cost of the conduct and operation of the sheriff's office, and the premium on the bond of the sheriff during his term of office, to exceed the amount of the fees, charges, and commissions earned and collected by the sheriff during his term of office. Yielding v. Ball, 205 Ala. 376, 87 South. 785. It is the duty of the board of revenue to see that the office of the sheriff is self-sustaining during his term of the office; that the disbursements during his term do not exceed the income during his term. Section 4 of the local act contains this provision:

"Provided that the board of revenue may pay the monthly salaries of officials mentioned in this act in anticipation of fees actually earned for services rendered."

The sheriff is an official mentioned in said Local Acts 1915, p. 374. His salary is named. The deputy sheriffs are officials named in said act to be appointed, and their compensation fixed by monthly salaries, should the board of revenue so determine. The board of revenue may, in anticipation of the fees actually earned by the sheriff for services rendered, draw warrants for the monthly salaries of the sheriff and his deputies to the full amount of the said fees, and the treasurer of the county should pay the warrants so· drawn to the amount of the said fees. Sections 6½ and 7, Gen. Acts 1915, p. 383; section 4, Local Acts 1915, p. 374.

It appears from the allegations, proof, and agreed facts that the defendant had in his custody in the general fund of the county more than $500 when this warrant for $500 for the monthly salary of the sheriff for January, 1922, issued by the board of revenue, was presented to him, and the fees and commissions actually earned and uncollected for services rendered by the sheriff at that time exceeded the sum of $500. Under these agreed facts it was the duty of the defendant, the treasurer of the county, to have paid the warrant. He· refused to do so. The court did not err in rendering the judgment against him.