## PICKENS COUNTY et al. v. JOHNSON.
### 6 Div. 324.

Supreme Court of Alabama.

June 8, 1933.

Rehearing Denied June 22, 1933.

Curry & Curry, of Carrollton, and H. A. & D. K. Jones, of Tuscaloosa, for appellants.

192

Patton & Patton, of Carrollton, for appellee.

KNIGHT, Justice.

Pickens county, and the state of Alabama, suing for the use of said county, filed in the circuit court of Pickens county two separate suits against M. Johnson, and his sureties, for the breach of two official bonds, executed by said Johnson, and his sureties to said county for the faithful performance by said Johnson of the duties of treasurer of Pickens county. Both suits were filed on March 17, 1932.

In the first suit, appearing in the record, recovery was sought for a breach of Johnson's official bond, given to cover his term of office as treasurer for the year 1932. Upon this bond, the National Surety Company was surety. In this suit the amount of recovery was limited to $20,000, being the full penalty of the bond.

In the second suit, recovery was sought for a breach of Johnson's official bond, given to cover his term of office as treasurer for the year 1931. The amount of recovery sought in this suit was limited to $30,000. In this bond, the United States Fidelity & Guaranty Company is the surety.

The defendant M. Johnson filed in each of said causes a motion to transfer the same to the equity side of the docket, to be there consolidated, to prevent a multiplicity of suits against the defendant, or to prevent him from being harassed by several actions by the same plaintiffs, involving the same subject-matter. It is also averred in the motion that both of the actions are based upon the

same alleged loss or default, and that if there is liability[1] on the part of the defendant Johnson, as the result of the alleged failure in his official duty or duties as such treasurer, it will become necessary for the court to determine the respective liabilities of the several parties, "and to determine the fact or extent of co-liability or right and liability of contribution as between the respective sureties, all of which can be finally determined in one and the same cause in the equity side of this court, and cannot be determined in the several actions now pending in the law side of this court."

■ The motion also avers that the suits involve complicated accounts, which can only be properly settled in a court of equity. There are other averments included in the motion, which were no doubt added in an effort to disclose an equitable right for the transfer. The propriety of the transfer of the case we will not now consider, as, whether the motion was rightly or improvidently granted, we cannot consider on this appeal. The statute, under which the removal order was made, does not authorize an appeal. Code, § 6490; Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Cornelius v. Moore, 208 Ala. 237, 94 So. 57; Aust v. Sumter Farm Co., 209 Ala. 669, 96 So. 872; Pearson v. City of Birmingham, 210 Ala. 296, 97 So. 916.

After the transfer of the two cases to the equity side of the docket, the defendant Johnson filed in the cause his bill of complaint, and to this bill of complaint he made Pickens county, and the state of Alabama, suing for the use of Pickens county, the United States Fidelity & Guaranty Company, National Surety Company, the First National Bank of Tuscaloosa, and H. H. Montgomery, as superintendent of banks of the state of Alabama, liquidating the Bank of Carrollton, parties defendant.

The bill in this cause is rather voluminous, but as we view it, it is not necessary to a proper understanding of the questions raised that we make any lengthy statement of the facts.

It is made to appear, from the averments of the bill as amended, that the complainant therein, M. Johnson, was elected treasurer of Pickens county by the court of county commissioners of Pickens county for the year 1931; that his bond therefor was fixed by order of the court at $30,000; that this bond was executed by the said Johnson, with the United States Fidelity & Guaranty Company as surety thereon; and that this bond was approved and ordered to be recorded on January 1, 1931. This bond recited: "The condition of the above obligation is such, That whereas the above bound M. Johnson was on the 16th day of December, 1930, appointed treasurer of Pickens County, Alabama. Now if the said M. Johnson shall faithfully discharge the duties of such office during the time he continues therein, or discharges any of the duties thereof, then the obligation to be void; otherwise to remain in full force and effect."

It is also made to appear from the amended bill that M. Johnson was appointed by the court of county commissioners of Pickens county treasurer of the county for the year 1932, with bond fixed in the sum of $20,000, with the National Surety Company as his surety. The conditions of the bond are substantially the same as in the bond given for the year 1931.

It appears that M. Johnson was appointed treasurer of the county under the provisions of section 322 of the Code; Pickens county had during the time a population of less than 55,000 inhabitants.

With reference to the designation of a county depository and the election or designation of a county treasurer for the year 1931, we find the following averments in the sixth paragraph of the bill, showing the acts of the court of county commissioners with respect thereto:

" 'In the matter of designating the county depository for the year beginning January 1, 1931, and ending December 31, 1931, fixing the amount of bond, duty, etc. It is the order of the court that the Bank of Carrollton be designated as county depository.

" 'Carrollton, Ala., Dec. 1, 1930.
" 'To the Honorable Commissioners Court of Pickens County, Alabama.
" 'Gentlemen:
" 'The Bank of Carrollton hereby agrees to pay 4% interest on the daily balances of Pickens County during the next current year if the Bank of Carrollton is designated as depository for the county funds for the year 1931, and to keep their books and accounts, render reports, etc.
" 'Yours very truly,
" 'A. H. Dabbs, President.

" 'Aliceville, Ala., Dec. 1, 1930.
" 'To the Honorable Board of County Commissioners of Pickens County.
" 'Carrollton, Alabama.
" 'Gentlemen:
" 'We beg to submit our bid of 2.60 per cent. per annum to be allowed on daily balances of the Pickens County funds should this bank be designated the county depository for the ensuing year.
" 'Yours very truly,
" 'J. V. Parks, President.

" 'In the matter of the election of a county treasurer for the year 1931, fixing the amount of his bond and fixing his duties, it is the order of the court that A. H. Dabbs be elected county treasurer for the term of one year from January 1st, 1931, and his bond be fixed

at $30,000.00 and his duties fixed as required by law and that the Bank of Carrollton pay 4% on daily balances.'

"And [the foregoing] is of record in the commissioners court minutes beginning at page 362.

"That on December 22, 1930, said A. H. Dabbs resigned as county treasurer and complainant was appointed as county treasurer in his stead, and the following appears of record in the commissioners court of Pickens County:

"'In the matter of resignation of A. H. Dabbs as county treasurer of Pickens County, it is the order of the court that said resignation be accepted.

"'December 22, 1930.

"'To the Honorable Commissioners Court,

"'Carrollton, Alabama.

"'Gentlemen:

"'Due to my ill health and my inability to personally look after the duties of the office of county treasurer I respectfully request that M. Johnson, Vice-President of the Bank of Carrollton, be named as county treasurer of Pickens County in my stead.

"'Yours very truly,      A. H. Dabbs.'"

With reference to the designation of M. Johnson as treasurer of the county for the year 1932, the bill avers, in paragraph 11, that the court of county commissioners made the following orders:

"In the matter of designating county depository, fixing the amount of bond, etc.

"There being no bids received it is the order of the court that a county treasurer be elected by the court.

"In the matter of electing a county treasurer, fixing the amount of bond, etc.

"It is the order of the court that M. Johnson be elected county treasurer of Pickens County for the year beginning January 1, 1932, and ending December 31, 1932, and that the amount of his bond be fixed at $20,000.00 and the Bank of Carrollton agrees to pay 2½% on daily balances if M. Johnson is elected county treasurer."

The bill, as amended, shows that after the selection and qualification of M. Johnson as treasurer of Pickens county in each of the two years, he entered upon the duties of his office, and acted as such, certainly down to the time the Bank of Carrollton failed and went into the hands of the state superintendent of banks for liquidation, and that he deposited the funds coming into his hands as such treasurer in the Bank of Carrollton, and it is averred that this was done with "the full knowledge and consent of the county commissioners, and under their instructions, and that complainant was not at liberty to deposit said funds otherwise, or make any other disposition of said funds, and never at any time did he have any alternative other than that of depositing said funds of said county in said bank.

It is also averred that at or before making the deposits in said bank by the complainant, as such treasurer, during each of said years 1931 and 1932, the complainant did, in good faith, require and take from the said Bank of Carrollton good and sufficient security to secure the payment of such funds of said county so deposited in said bank.

In section 18½, added by way of amendment to the bill, among other things not necessary to be set out, the complainant avers that the deposits made in the Bank of Carrollton, especially those made in 1931, were made under the specific directions and instructions of the *county commissioners of Pickens county*, acting for said county, under authority vested in them by virtue of the provisions of chapter 17, Article 2 of the Code; that such deposits were made under a contract between the county of Pickens and said bank, and with full knowledge of said bank and the county that the funds so deposited were public funds, and that both said bank and the county, in virtue of said contract, were to receive benefits mutually agreed between them in relation thereto.

Complainant insists that if a right in favor of said county against him exists because of any technical violation of his official obligations and his official bond in said year 1932, his equitable rights against said county, which required him to violate his official obligation and bond, are superior to the right of said bank, which took the public funds of said county for deposit impressed with the trust and received a benefit therefrom; and that said county should first be required to exhaust its remedy against the assets of said bank with which it required the complainant to deposit said moneys.

The bill as amended also avers that the dealings between Pickens county and the complainant involve many and complicated matters of accounts. However, no discovery is sought.

There are other averments of the bill that we deem it unnecessary to set out.

To the bill as amended Pickens county, and the state of Alabama suing for the use of Pickens county, filed numerous grounds of demurrer. Among the grounds assigned were that the bill was without equity; that the complainant has an adequate remedy at law; and that the complainant does not offer to do equity. This demurrer was overruled by the court, and from the interlocutory decree this appeal appears in this court.

█ It appears that the complainant was the duly appointed or designated treasurer of Pickens county during the entire years of 1931 and 1932, that he gave bond as such in due form of law, and properly conditioned,

and that he also subscribed to the constitutional oath, as such official. The appointment and qualification of Mr. Johnson subjected him to all the duties and liabilities of a county treasurer, as fixed and prescribed by law. Hasty, County Judge, v. Marengo County Bank, 206 Ala. 280, 89 So. 433.

It also appears that as such treasurer, during said period of time, he received large sums of money, the property of Pickens county, and that he deposited the same in the Bank of Carrollton.

It is also clear from the averments of the bill that, before depositing any of the county's funds in the Bank of Carrollton, the complainant, conscious of the obligation resting upon him, as such treasurer, to safely keep and to pay out, on proper warrants, the funds so intrusted to him, required the Bank of Carrollton to execute to him "good and sufficient security to secure the payment of said funds of said Pickens County so deposited in said bank by complainant."

Does the bill, as amended, contain equity?

It is insisted that the accounts between the complainant and the defendant are complicated, consisting of numerous transactions and entries; that the complainant during his term of office received many thousands of dollars of the county's money, and paid out many thousands of dollars on warrants of the county; that the accounting involves the correctness and legality of the payments made by complainant.

It appears that the complainant had served as treasurer of Pickens county, up to the closing of the doors of the Bank of Carrollton, twelve and one-half months, and the suits only had for their purpose recoveries of the complainant of moneys received by him, and not disbursed, during that period of time.

We must presume that all moneys were paid out on legal and properly drawn warrants. It would further seem clear that in arriving at the status of the accounts between complainant and the county of Pickens, the simplest principles of mathematics would be required—the ascertainment of the aggregate of receipts, and then an ascertainment of the aggregate of the disbursements. Then by the very simple process of subtraction—disbursements from receipts—the result would show the balance in hands of the treasurer.

Furthermore, the law required the treasurer "to keep a correct account of the receipts and disbursements of all moneys received by him for the county, according to the forms herein prescribed, charging himself with all moneys so received, of whom, on what account, and the amount, and crediting himself with all payments, stating the number and character of the claims, in whose favor, and the amount."

■ In view of the fact that no discovery is sought, nor is any necessary, we see no equity in the bill based upon any complication of accounts, or as involving numerous transactions. Beggs v. Edison Electric Illuminating Co., 96 Ala. 295, 11 So. 381, 38 Am. St. Rep. 94.

■ It is also insisted by complainant that he deposited the funds of the county in the Bank of Carrollton by direction of the county commissioners, acting for the county; that he had no alternative, etc.; and that in complying with this direction he should be absolved from liability, or that the county should first be required to exhaust its rights against the assets of the bank.

Whether the commissioners' court of Pickens county was authorized to require the funds of the county, in the hands of the treasurer, to be deposited in the Bank of Carrollton, is of no moment whatever, as the treasurer accepted the office with this provision exacted of him as to depositing the funds in the bank. When he made his official bond, this provision then appeared on the minutes of the court, and as Mr. Johnson was vice president of the bank, we may assume the same was fully known and agreed to by him. If he did not wish to undertake the trust under those terms, he should have then declined the appointment.

It is insisted also that the county should be required to exhaust *its rights* against the assets of the bank, before the complainant and his sureties should be called upon to make good the loss to the county. This insistence entirely overlooks the fact that the primary and principal debtor to the county is the complainant.

■ It is next urged that if the complainant and his sureties are liable to the county for the loss, they should, in equity, be subrogated to all the rights of said Pickens county against the Bank of Carrollton. The answer to this asserted equity is that neither the complainant nor his sureties have paid the debt to the county, and subrogation cannot be decreed, in any case, unless the debt—the whole debt—has been paid. Corinth State Bank v. First National Bank of Florence, 217 Ala. 623, 117 So. 216; Cross v. Bank of Ensley, 205 Ala. 274, 87 So. 843; Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220; Atherton v. Tesch, 202 Ala. 448, 80 So. 832; H. H. Montgomery, Sup't. of Banks, v. Wadsworth, 225 Ala. 667, 148 So. 419.

■ Nor do we think there is equity in the bill to prevent a multiplicity of suits. It is true there were two suits pending on the law side of the docket against this complainant, brought by Pickens county; one suit involving the breach of complainant's bond as treasurer of that county, with the United

States Fidelity & Guaranty Company as his surety, covering acts done or omitted during the year 1931; while the other covered acts done or omitted during 1932, and for which an entirely new bond was executed, with a different surety—the National Surety Company.

In the case of City of Albany v. Spragins et al., 214 Ala. 449, 108 So. 32, 34, this court had occasion to review the authorities on the subject of multiplicity of suits as affording grounds for resort to an equity court. It is there observed:

"For its interposition there must exist a practical necessity to prevent *vexatious litigation*. In its very origin such suit was called a 'bill of peace.' 'Suits do not become of equitable cognizance because of their number merely.' Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654, quoted in Turner v. City of Mobile, 135 Ala. 73, 33 So. 132.

"As previously stated, there is nothing here presented indicating that the city threatens or intends to harass complainants by vexatious litigation, and, as said in Pacific Express Co. v. Seibert (C. C.) 44 F. 310, the court will not impute to these public officials 'a litigious or vindictive spirit, or a purpose needlessly to vex and harass the citizen with lawsuits.' "

In 1 Pomeroy, Equity Jurisprudence, § 254, the author, speaking to this phase of the the equitable doctrine asserted here by complainant, says: "It may be assumed, therefore, that a court of equity will not exercise jurisdiction on this particular ground (multiplicity of suits as conferring jurisdiction upon a court of equity), unless its interference is clearly necessary to promote the ends of justice, and to shield the plaintiff from a litigation which is evidently vexatious. It should be carefully observed that a court of equity does not interfere in this class of cases to restrain absolutely and completely any and all trials and decisions of the questions presented by the pending actions at law; it only intervenes to prevent the repeated or numerous trials, and to bring the whole within the scope and effect of one judicial investigation and decision."

In the case of Roanoke Guano Co. v. Saunders, 173 Ala. 347, 56 So. 198, 199, 35 L. R. A. (N. S.) 491, we held: "It has been stated by this court that it has never undertaken to define the jurisdiction of equity to prevent a multiplicity of suits, nor even to lay down the general principles governing the several categories of cases in which that jurisdiction may be invoked; but this court has evinced an inclination toward confining this jurisdiction to a narrow field, in order to conserve and preserve the right of trial by jury. Turner v. Mobile, 135 Ala. 73, 124, 33 So. 132, and cases there cited. Bills of this character are called bills in the nature of bills of peace, to quiet the rights of parties and to put an end to further litigation."

It is also insisted that if the complainant is held to be liable for any loss of the county's funds, in order to determine whether such liability, if any, falls within his term of office as acting treasurer for the year 1931 or 1932, or whether partly within one term and partly within another, and in order to determine the liability, if any, of the sureties upon his official bonds for said respective terms of office, it will be necessary that a long and complicated accountings be had, etc.

■ We will not presume, as this insistence would seem to indicate, that the complainant would not pay any just amount that the court may find him to be due the county. We will not presume that he would permit the judgment to be enforced against his sureties. The complainant is in no position to invoke the aid of the equity court in this regard.

We are at the conclusion that the only defense open to the complainant, against the suits of the county, is available to him in the actions at law, and, for anything averred in the bill, the complainant has stated no case which warrants equitable interposition.

It follows, therefore, that the decree of the circuit court overruling the demurrer filed by Pickens county, and the state of Alabama suing for Pickens county, will be reversed, and a decree here rendered sustaining said demurrer.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.