156 So. 548

**PICKENS COUNTY et al. v. WILLIAMS, Superintendent of Banks, et al.**

**6 Div. 570.**

Supreme Court of Alabama.

June 21, 1934.

Rehearing Denied Oct. 4, 1934.

---

251

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Curry & Curry, of Carrollton, and H. A. &
D. K. Jones, of Tuscaloosa, for appellants.

Wright, Warren & Searcy, of Tuscaloosa, for appellees.

BOULDIN, Justice.

This appeal is from a decree sustaining demurrers of H. H.. Montgomery, superintendent of banks, to a bill in equity filed by Pickens county with the ultimate aim of collecting county funds deposited by M. Johnson, as county treasurer, in the Bank of Carrollton, and there remaining until the failure of the bank, January 14, 1932; whereupon it was taken over by the superintendent of banks for liquidation.

The county claims the entire assets of the bank in the hands of the liquidating agent are chargeable with a trust in favor of the county, entitling it to priority of payment over all other depositors and creditors.

█ The bill avers Johnson was selected or appointed, by the governing board of Pickens county, a county with less than 55,000 population, to act as county treasurer for the calendar year 1931; that he qualified, took the oath of office, and executed bond with United States Fidelity & Guaranty Company as surety; that he was again appointed for the calendar year 1932, and qualified with National Surety Company as surety; that during the year 1931, Johnson deposited the county funds on a general deposit account in the Bank of Carrollton, an incorporated state bank, of which he was the managing officer, and which bank was not a qualified depository of public funds under the laws of the state; that at the end of the year 1931, there was an aggregate balance of the several funds of $16,934.79 so on deposit; that from January 1st to January 14th, when the bank failed, further funds were deposited aggregating $6,591.12, and during that period were duly paid out $2,552.98, leaving a balance of $20,981.93, on deposit when the bank failed, and Johnson resigned as treasurer.

These averments make a case of breach of trust, conversion of public funds in placing same on general deposit in a bank not qualified as a state depository.

█ In such case, it must be regarded as the settled rule in Alabama that all the assets of the insolvent bank are charged with a trust for the payment of such public funds in priority to the claims of other depositors and creditors. Montgomery, Superintendent of Banks, v. State et al. (Ala. Sup.) 153 So. 394; 1 Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769; Green, Superintendent of Banks, v. City of Homewood, 222 Ala. 225, 131 So. 897;

Montgomery, Superintendent of Banks, v. City of Athens, ante, p. 149, 155 So. 551.

Appellee strongly assails the soundness of this doctrine, especially its extension to counties. This contention was fully discussed in Montgomery, Superintendent of Banks, v. State et al., supra.

The doctrine, referred to the prerogative right of the sovereign, has been the subject of discussion and of some conflict of decision throughout the country from its beginning.

Much may be said against the application of such rule in favor of the state or county to deposits in state banks, public institutions, created by the state, supervised by the state, held out, in a sense, to the private citizen as a safe place to deposit his money. It is difficult for him to see why he should not share in the common fund in proportion as his money has contributed to create such fund; or, stated differently, why he should be made to suffer in order to protect the community, represented by the state, for the dereliction of its own officers, and institutions.

We think the only foundation for the rule, as applied to American institutions, is that stated by Mr. Justice Story in United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L. Ed. 308: "It is founded not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order *to secure an adequate revenue to sustain the public burdens, and discharge the public debts.*" [Italics supplied.]

This public policy can be justified only on the necessity for the government to function, its public funds being essential to that end. This is the basis of the doctrine of Montgomery, Superintendent of Banks, v. State et al. (Ala. Sup.) 153 So. 394, 396.

██ If we adhere to the doctrine as applied to state funds, no sound reason can be given for a different rule as to county funds. Attention is called to section 215 of the Constitution, limiting the rate of taxation for county purposes, section 214, limiting the rate for state purposes, and section 218, forbidding any legislative act requiring a county to pay any demand chargeable to the state at the time the Constitution was adopted.

True, of course, county funds thus raised cannot be employed to meet general demands against the state, nor diverted from county purposes. But this does not weaken the argument that county funds are essentially state funds in the sense used in Montgomery,

Superintendent of Banks, v. State et al., supra. The county, as a local subdivision, under our system, is a part of the state government, performing the statutory or constitutional functions committed to it, many of which relate to the assessment and collection of the state revenues in that area, as well as the execution and judicial administration of the state's laws for the protection of life, liberty, and property; and functions in educational and other activities. It is not a parceling out of the state's prerogative right among several distinct governments, but a recognition of the state's one prerogative right as touching all public funds essential to the carrying on of the government in all its functions.

■ The fact that the county board was a party to the arrangement whereby Johnson, as county treasurer, deposited these funds on general deposit in his bank, stipulating that the bank should pay interest on the daily balance, did not constitute this a lawful deposit, nor estop the county.

■ Reliance is placed on the provision of section 322 of the Code, saying: " * * * such boards may designate some individual who may act as treasurer of such county under such terms and conditions as may be fixed by said courts of county commissioners or boards of revenue."

This by no means empowered the county board to relieve the county treasurer of the legal duties incident to the office. Pickens County et al. v. Johnson, 227 Ala. 190, 149 So. 252, 253; Hasty, County Judge, v. Marengo County Bank, 206 Ala. 280, 89 So. 433.

■■ A bill in equity may be maintained for the recovery of public funds without any special equity. The treasurer, the sureties on his bond, and all other persons interested in the subject-matter, may be made parties to such bill that all equities may be worked out in the one suit. Code, § 5649; Bradford et al. v. State, 201 Ala. 170, 77 So. 696; Id., 204 Ala. 46, 85 So. 435; National Surety Co. v. State et al., 219 Ala. 609, 123 So. 202; Self v. Blount County, 124 Ala. 191, 27 So. 554.

■■ That suits at law were first instituted by the county (Pickens County et al. v. Johnson, supra) was no obstacle to the filing of such bill, bringing in new parties. The removal of actions at law on motion of the plaintiff pursuant to Code, §§ 6488, 6489, includes cases where equity jurisdiction is enlarged or rendered more complete by statute, such as Code, § 5649. Nothing in the removal statute would exclude such bills.

■ The bill is challenged by the superintendent of banks for failure to aver presentation of this claim by the county to the superintendent of banks pursuant to Code, § 6310.

As a new proposition there would seem to be strong reason for holding "deposits shown by the books of the bank" (excepted from those required to be presented) should be limited to deposits in which the depositor claims a right to share as a general depositor in the fund; and that where the depositor repudiates the relation of a general depositor, and asserts a priority, as here, the superintendent of banks should be furnished with proof of such demand, that he may investigate, and allow or reject the claim in due course of the administration of his receivership. But this direct question was presented in Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, 225 Ala. 343, 142 So. 769, and ruled adversely to appellee. It was held the general term "deposit," as used in section 6310, Code, included this class. The Sparks decision was rendered a few months after this bank went into liquidation, and may have been followed by Pickens county in matter of procedure. In any event, we adhere to the rule stated.

■ We know of no rule which would apply the statute of limitations of one year to the enforcement of the trusts asserted in this bill.

■ A demurrer is limited to questions in which the demurrant is interested.

■ The equity of this bill under the statute does not depend on the question of primary or secondary security for this demand. Montgomery, Superintendent of Banks, v. Sparks, Tax Collector, supra.

The statute aims to bring in all parties.

■ The working out of the equities between the several parties liable, in whole or in part, is not involved in considering the equity of the bill on demurrer.

■ It appears from the bill that in connection with making the treasurer's bonds, certain assets of the bank were pledged, either to secure the treasurer, the sureties on the bonds, or the county, for this deposit. One of these items was a warrant or loan certificate for $5,000 evidencing a debt of the county to the bank, and the other a certificate of deposit, $5,000, issued to the Bank of Carrollton by another bank. We have held in the companion case of Pickens County et al. v. National Surety Company (Ala. Sup.)

155 So. 620,[2] that as against the sureties on the treasurer's bonds, the county has the right to impound these securities, and subject the same to the county's demand pro tanto.

As for the superintendent of banks, the right of the county to a surrender for cancellation of its own obligation to the bank, by way of set-off and reduction of its demand to that amount inuring to the benefit of all parties respondent, is not to be questioned. This is but an adjustment of the status of indebtedness between the county and the insolvent bank, fixing the balance chargeable against the funds in the hands of the liquidating agent.

As to the certificate of deposit, the county's claim against same is in common with all other assets of the bank, and it is of no moment to other creditors represented by the superintendent of banks whether the county is paid pro tanto in this way.

The earnest insistence that a bank cannot charge its assets, in which all depositors are entitled to share, as a security to one depositor, or by way of indemnity to the surety on the treasurer's bond, concerns the equities between the superintendent of banks and other respondents. We need express no opinion thereon.

In no event does it purge the transaction between the bank and the county treasurer from its character as a devastavit in depositing county funds in a bank not qualified as a depository of public funds. Code, § 3973, does relieve a public officer from the charge of embezzlement in making a deposit of public funds in a bank in good faith, taking "good and sufficient security" for such deposit. This section does not affect the civil liability of the treasurer for such funds. National Surety Company v. State et al., 219 Ala. 609, 123 So. 202. The section does imply that such security becomes available to state or county in the collection of its public funds. Whether this section contemplates pledging its assets as such security, and what equities arise between the superintendent and the sureties on the treasurer's bond touching the same, are not for review on this appeal.

The bill contains equity as against demurrant, the superintendent of banks, and the decree sustaining the demurrer in general terms, many assignments going to the equity of the bill as a whole, was error.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.

---

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

