195 So. 234

**COVINGTON COUNTY v. O'NEAL.**

4 Div. 103.

Supreme Court of Alabama.

Dec. 14, 1939.

Rehearing Denied April 4, 1940.

324

Mulkey & Mulkey, of Geneva, for appellant.

Powell, Albritton & Albritton, of Andalusia, for appellee.

**BROWN, Justice.**

This action is by the County of Covington against the personal representative of a deceased surety on the official bond of the county treasurer to recover money lost to the county by the alleged devastavit of the treasurer.

The complaint consists of two counts. The gravamen of the first count is the failure of the treasurer to pay to the plaintiff or account for the sum of $35,536.42, which the treasurer had in his possession, and which sum was lost to the county. The second count avers that the treasurer, G. M. Turner, "on. to-wit October 1st., 1932, had on deposit in Andalusia National Bank, of Andalusia, Alabama, and to his credit, as Treasurer of Covington County, Alabama, the sum of $35,546.32, which sum of money belonged to the plaintiff; that the said G. M. Turner deposited said money in said bank without authority of law and that as a result of the failure of said bank on or about October 1st., 1932, the said sum so deposited was lost to the plaintiff."

The pleas referred to below appear in the Reporter's statement of the case.

The defendant's pleas 2, 3, 4 and 5, set up the statute of non-claim, section 5815, of the Code 1923.

Pleas 6, 7 and 8, set up the appointment of said Turner as "acting treasurer," under the provisions of section 322 of the Code, 1923, the order of the court of county commissioners making the appointment, and directing the deposit of the funds of the county in the Andalusia National Bank, and the provisions of section 323 of the Code, which provides that: "All acts required by law to be performed by the county treasurer, *outside of the receipts and disbursements of the county funds,* shall be performed by the president of the board of revenue or court of county commissioners of the county." [Italics supplied.]

The overruling of the plaintiff's demurrers to these pleas, superinduced the nonsuit, and this appeal.

■ The appellant's first contention is that the county being a governmental agency is within the protection of the maxim Nullum tempus occurrit reipublicae— No time runs against the commonwealth or state. This question as applied to a claim of the County of Montgomery against the City of Montgomery for money gathered by taxation under § 215 of the Constitution as a special road tax, was fully considered in Montgomery County v. City of Montgomery, 195 Ala. 197, 70 So. 642, and decided adversely to the present contention of appellant.

The next contention is that the statute of non-claim, § 5815, of the Code, destroys the right—the debt—and that § 100 of the Constitution reads into the statute an exception as to claims in favor of the state, counties and other municipalities.

Said Section of the Constitution, declares that: "No obligation or liability of any person, association, or corporation held or owned by this state, or by any county or other municipality thereof, shall ever be remitted, released, or postponed, or in any way diminished, by the legislature; nor shall such liability or obligation be *extinguished* except by payment thereof; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; provided, that this section shall not prevent the legislature from providing by general law for the compromise of doubtful claims." [Italics supplied.] Constitution 1901, Article IV, Section 100.

In some jurisdictions the courts hold that statutes of non-claim operate to destroy the claim or debt, and not merely to destroy or withhold the remedy. Such was the holding in State of Washington v. Marvin Evans, 143 Wash. 449, 255 P. 1035, 1036, 53 A.L.R. 564; the court in that case observing: "Thus we think there is evidenced a legislative intent to not merely withhold the remedy, but to take away the very right of recovery out of the property left by a decedent, by failure on the part of a claimant to present his claim as our statute provides."

In other jurisdictions the courts hold the statute relates to and only affects the remedy. United States v. H. F. Backus, 1855, Fed.Cas.No.14,491, 6 McLean 443. There it was observed: "The eighteen months

given for the adjustment of accounts against the estate of the deceased, relates to the remedy, and cannot apply to a demand of the federal government."

It has by this court, since the case of Evans, Adm'r, v. Norris Stodder & Co., 1 Ala. 511, been consistently held that a failure to comply with the statute of non-claim is a defense which, like the general statute of limitations, must be specially pleaded, and when pleaded, because it presents a negative defense, it casts the burden on the plaintiff to prove compliance. Thrash v. Sumwalt, 5 Ala. 13 (19); Mitchell et al., Adm'rs, v. Lea, Adm'r, 57 Ala. 46; W. L. Weller & Sons v. Rensford, 185 Ala. 333, 64 So. 366.

In Doe ex dem. Duval's Heirs v. McLoskey, 1840, 1 Ala. 708, the court held that the debt secured by mortgage was not extinguished, but only its recovery barred by failure to comply with the statute of non-claim, and therefor the lien of the mortgage was unimpaired, and unless the estate of the decedent was looked to for the deficiency, a presentation of the claim was not necessary.

Section 100 of the Constitution prevents extinguishment of the claim—the debt—but does not affect the power of the Legislature to provide for limitations in the interest of repose. This power may be applied against the state and its agencies notwithstanding § 100 of the Constitution. State v. Acacia Mut. Life Ass'n, 214 Ala. 628, 108 So. 756.

The plaintiff county, taking the averments of the pleas to be true, at the time the alleged liability occurred, was in that class of not more than 55,000 population, and was subject to the provisons of Article 2 of Chapter 17 of the Code, including §§ 322 and 323, and the appointment of said G. M. Turner, made by the court of county commissioners was an emergency appointment made in the exercise of the powers conferred on the court of county commissioners by said § 322, which provides: "If the board of revenue or court of county commissioners are unable to designate any depository for the county funds in their county by reason of their inability to secure from any bank within its limits terms for the handling of the county funds as provided in this article, satisfactory to such boards of revenue or courts of county commissioners, then such boards *may designate some individual who may act as treasurer*

*of such county under such terms and conditions as may be fixed by said* courts of county commissioners or boards of revenue." Jenkins v. State ex rel. Watson, 219 Ala. 554, 123 So. 31. [Italics supplied.]

And Section 323 provides: "All acts required by law to be performed by the county treasurer, *outside of the receipts and disbursements of the county funds,* shall be performed by the president of the board of revenue or court of county commissioners." [Italics supplied.]

It is well settled that the surety on the official bond of a county treasurer is liable for his omission or the breaches of his statutory duties. Townsend and Gordon v. Everett, use, etc., 4 Ala. 607.

Also, in determining the liability of sureties on official bonds the statutes prescribing the duties of the particular officer will be read into his official bond. State v. Alabama Power Co., 230 Ala. 515, 162 So. 110; National Surety Co. v. State et al., 219 Ala. 609, 123 So. 202.

Applying this rule of interpretation to the official bond of G. M. Turner as acting treasurer, liability of the surety could only arise out of a negligent or wrongful failure to receive or a wrongful appropriation or disbursement of the funds of the county, and although the court of county commissioners, in his selection and appointment must be treated as a statutory body of limited powers, the statute expressly conferred on that body power to fix the "terms and conditions" on which he accepted the appointment, and the requirement that he receive and deposit the money in the designated bank was clearly within this power. Therefore, if as alleged in special pleas 6, 7 and 8, he deposited the money in said bank in accordance with the order of the court of county commissioners, and it was lost to the county through no fault of Turner, the surety on his official bond is not liable. Lewis v. Lee County, 66 Ala. 480; Rushing v. Alabama Nat. Bank, 226 Ala. 621, 148 So. 306.

A like question was considered by this court in Pickens County et al. v. Johnson, 227 Ala. 190, 149 So. 252, and again in Pickens County et al. v. Williams, Superintendent of Banks et al., 229 Ala. 250, 156 So. 548, and the questions were treated and disposed of, apparently, without considering the effect of § 323 of the Code, relieving the acting treasurer of the duty of safely keeping the county's funds, while they

remained on deposit in the designated bank, and imposing that duty on the county board. These cases on this point are overruled.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, and FOSTER, JJ., concur.

BOULDIN, J., is of opinion that the decisions in Pickens County et al. v. Johnson, supra, and Pickens County et al. v. Williams, Superintendent of Banks et al., supra, as to the liability of the treasurer's bond, are sound and should not be overruled, and on this point dissents, but otherwise concurs in the opinion.

On Rehearing.

BROWN, Justice.

■ There is no special magic or charm in the term "county treasurer." It was at one time a county office—a creature of the Legislature—in counties having a population of not more than fifty-five thousand, but that office has been abolished in such counties, and in lieu thereof the Legislature has conferred on the county boards authority to contract with banks as custodians of county funds. Such banks, when so contracted with, are not officers but a "contractual agency."

In Compton v. Marengo County Bank, 203 Ala. 129, 130, 82 So. 159, 160, it was observed: "Furthermore the act itself in the counties within its contemplation (State ex rel. v. Bugg, 196 Ala. 460, 71 So. 699), expressly abolished the office of county treasurer on the 'first Monday after the second Tuesday in January, 1917.' The clear purpose was to abolish the office of county treasurer, and to create a mere contractual agency to perform functions theretofore performed by the abolished officer. It is not conceivable that the Legislature intended to abolish the office of county treasurer and by the same enactment reincarnate the extinct office by another name. The object was more rational than such a conclusion would attribute to the lawmakers."

It cannot be doubted that by the very terms of the original act, now § 318 of the Code of 1923, such contractual agencies, "The bank or banks so designated as depositories for county funds shall be charged with all the duties and subject to the same liabilities insofar as the *safekeeping and paying out* of the funds of the several counties are concerned, as are now imposed by law upon county treasurers." [Italics supplied.]

■ It was within legislative competence to so provide. As we have repeatedly held such matters of policy, as to counties and county funds and how they shall be handled and preserved, are matters of legislative policy. Johnson et al. v. Robinson et al., 238 Ala. 568, 192 So. 412; Morgan County et al. v. Edmonson, 238 Ala. 522, 192 So. 274; State ex rel. Day et al. v. Bowles et al., 217 Ala. 458, 116 So. 662.

The Legislature did not stop with conferring power on the county board to procure a bank or banks as "contractual agencies" but empowered the county board to select "an emergency individual" under § 322 of the Code to "act as treasurer," and to *"fix the terms and conditions"* on which he would be selected. Jenkins v. State ex rel. Watson, 219 Ala. 554, 123 So. 31. Opinion on rehearing 219 Ala. page 556, 123 So. page 32. [Italics supplied.]

And by Section 6 of said act of 1915, now § 323 of the Code, the Legislature itself fixed the duties of such "emergency individual" limiting his duties to receiving and paying out the county funds, and imposing all other duties in respect thereto under such emergency appointment on "the president of the board of revenue or court of county commissioners."

■ This, under the authorities cited, was also within legislative competence and policy not controllable by judicial interference.

The suggestion by appellant that "It is obvious that the headliner thought that this Section [323] applied only when there was no depository or emergency treasurer." There were no headlines in the original act the pertinent section of which was brought forward in the Code as § 323.

Moreover, in counties falling within the influence of Article II, Chapter 17 of the Code, there is no such office as county treasurer, and the statute divides the duties and powers in respect to county funds —in the absence of a "contractual agency," between the emergency individual acting, and the head of the county board, and the duty of safekeeping was placed on the county board or its president, and if the money was lost through his negligence it would be morally and legally wrong to

make the "emergency individual's" bondsmen liable for the county's own negligence.

Opinion extended. Application for rehearing overruled.

ANDERSON, C. J., and GARDNER, THOMAS, and FOSTER, JJ., concur.

BOULDIN and KNIGHT, JJ., dissent.

BOULDIN, Justice (dissenting).

The majority opinion, which becomes the law of the case, imputes to the Legislature a complete departure from the settled legislative policy safeguarding county funds by adequate bond given by the custodian. In my opinion this decision calls loudly for prompt legislative action on a question of such vital public importance. For this additional reason I deem it a duty to give expression to my dissenting views.

The long settled policy of this State, expressed by legislative acts and judicial decisions, forbidding the deposit of public funds on account in a bank, substituting the bank credit for actual funds, unless protected by adequate bond or pledge of securities, is so well known that it will suffice to merely remind ourselves.

The depository Act of 1915, now Sections 312 to 324 of the Code, expressly requires of the bank selected as a depository the giving of bond or the deposit of United States Bonds or State Bonds. Code, § 317 (Acts 1933, Ex.Sess. p. 19).

It is now held that although a bank selected as a depository must give bond; this same statute empowers the County Commissioners to appoint a treasurer, empowered to deposit in the same bank without bond or security. To my mind this attributes to the Legislature such an inconsistent policy, one so disregardful of the interests of the public as not to be entertained.

Responsibility for "receipts and disbursements" under Section 323, surely implies a lawful disbursement, having the funds in hand to disburse for lawful purposes.

As for further provisions of § 323, one need only look to the duties of the treasurer defined in § 303 to find a field of operation; duties which, as in Subdivision 10, may be performed by another as well as by the treasurer.

This decision overrules Pickens County et al. v. Johnson, 227 Ala. 190, 149 So. 252, and Pickens County et al. v. Williams, Superintendent of Banks et al., 229 Ala. 250, 156 So. 548, concurred in by every member of the court, on the assumption that the court failed to consider the act in its entirety.

I respectfully disclaim such oversight, and register such firm conviction that those opinions were correctly decided; that the instant decision, not the former ones, is unsound.

KNIGHT, J., concurs in this dissenting opinion.