70 So.3d 1198 (2011)
Ex parte JPMORGAN CHASE BANK, N.A., J.P. Morgan Securities, Inc., and Charles E. LeCroy.
(In re Jefferson County, Alabama
v.
JPMorgan Chase Bank, N.A., et al.).
Ex parte Douglas W. MacFaddin.
(In re Jefferson County, Alabama
v.
J.P. Morgan Securities, Inc., et al.).
1091224 and 1091288.
Supreme Court of Alabama.
April 15, 2011.
Don B. Long, Jr., Clark R. Hammond, Alan D. Mathis, and Joseph W. Carlisle of Johnston Barton Proctor & Rose, LLP, Birmingham; and Thomas C. Rice, Mary Beth Forshaw, and Ian R. Dattner of Simpson, Thacher & Bartlette LLP, New York, New York, for petitioners J.P. Morgan Securities, Inc., and JPMorgan Chase Bank.
William N. Clark of Redden, Mills & Clark, LLP, Birmingham; and Lisa A. Mathewson, *1199 Philadelphia, Pennsylvania, for petitioner Charles E. LeCroy.
Joseph B. Mays, Jr., Dylan C. Black, and J. Thomas Richie of Bradley Arant Boult Cummings, LLP, Birmingham, for respondent.
SHAW, Justice.
This case involves a legal action by Jefferson County ("the County") against several defendants seeking damages stemming from financial transactions involving the County's sewer system. J.P. Morgan Securities, Inc. ("J.P. Morgan"), JPMorgan Chase Bank, N.A. ("JPMorgan Chase"), Charles E. LeCroy, and Douglas W. MacFaddin (hereinafter referred to collectively as "the petitioners"), all defendants below, petition this Court for writs of mandamus directing the trial court to dismiss this action for lack of subject-matter jurisdiction. We deny the petitions.

Facts and Procedural History
The underlying facts of this case involve numerous complex financial transactions, the details of which are not necessary for an understanding of the issues presented in these petitions. Briefly stated, according to the complaint, in 1996 the County, as a result of unrelated litigation, was required to make certain improvements to the County's sewer system. From 1997 until October 2002, the County issued several series of revenue warrants to raise the funds necessary for the improvements. The vast majority of those warrants carried fixed interest rates.
In late 2002 and in 2003, the County engaged in several transactions to convert the fixed-rate warrants into warrants with either variable interest rates or rates set by an auction process. J.P. Morgan was the "lead underwriter" for the majority of the refinanced warrants. In connection with these transactions, the County also engaged in numerous interest-rate-swap transactions with JPMorgan Chase. The complaint contends that the then president of the county commission, Larry Langford, insisted that the County employ Blount Parrish & Company ("Blount Parrish"), an underwriting firm, in these transactions.
According to the complaint, the effect of these transactions was to transform the County's debt issued to fund the sewer-system improvements from the fixed-rate debt to a more risky debt that was more subject to acceleration and that carried higher interest rates. Additionally, the County paid large fees to J.P. Morgan, JPMorgan Chase, and Blount Parrish to underwrite the transactions. Those fees were "artificially inflated," the complaint alleged, in part because of various "bribes, kickbacks, and pay-offs." The County also asserts that J.P. Morgan paid fees to Blount Parrish although Blount Parrish performed little work on the transactions and that Blount Parrish, through its owner William B. Blount and its agent or employee Albert W. LaPierre, essentially bribed Langford to have the County employ Blount Parrish, J.P. Morgan, JPMorgan Chase, and others in the transactions.
In November 2009, the County filed an action against J.P. Morgan, JPMorgan Chase, Blount Parrish, Blount, LaPierre, and Langford, as well as LeCroy and MacFaddin, two former employees of J.P. Morgan. The complaint sought damages against the defendants based on theories of fraud, suppression, conspiracy, and unjust enrichment. The petitioners filed motions to dismiss the case. Those motions, which were supported by evidentiary exhibits, alleged that the County lacked standing as a plaintiff by virtue of Ala. *1200 Code 1975, § 6-5-4. After a hearing, the trial court denied the motions.
In case no. 1091224, J.P. Morgan, JPMorgan Chase, and LeCroy petition this Court for mandamus review of the trial court's order denying their motion to dismiss; in case no. 1091288, MacFaddin similarly petitions for review. This Court ordered answers and briefs and consolidated the petitions for the purpose of writing one opinion.

Standard of Review
"A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000)."
Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001).

Discussion
Alabama law provides that every county has the "power to sue or be sued in any court of record." Ala.Code 1975, § 11-1-2. The petitioners contend, however, that Ala.Code 1975, § 6-5-4, grants the governor the sole authority to maintain an action like the underlying action and that the County has no standing to pursue the action. Section § 6-5-4(a) states:
"The Governor may cause actions to be commenced for the recovery of any public moneys, funds or property of the state or of any county which have been lost by the neglect or default of any public officer, which have been wrongfully expended or disbursed by such officer, which have been wrongfully used by such officer or which have been wrongfully received from him."[1]
In determining the meaning of a statute, this Court looks to the plain meaning of the text:
"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'
"Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992))...."
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998).
The unambiguous text of § 6-5-4(a), specifically, the word "may," indicates that it was the intent of the legislature to confer on the governor the nonexclusive authority to commence an action to recover, among other things, funds wrongfully expended by public officials. Nothing in § 6-5-4 indicates that the governor has the sole power, exclusive of the County and despite § 11-1-2, to file an action to *1201 recover such funds.[2] However, the petitioners contend that this Court, in Walker County v. White, 248 Ala. 53, 26 So.2d 253 (1946), has construed the predecessor statute to § 6-5-4 in such manner.
In Walker County, the attorney general, in the name of the State and "for the use and benefit of" Walker County, filed a suit pursuant to Title 7, § 73, Code of Alabama 1940, the predecessor to § 6-5-4(a), and Title 55, § 169, Code of Alabama 1940,[3] seeking to recover certain funds illegally expended by a former Walker County official. This Court noted that the predecessors to those two sections of the 1940 Code had previously been harmonized in Montgomery v. Sparks, 225 Ala. 343, 142 So. 769 (1932), and noted that the statutes allowed both the governor and the attorney general "to cause suit to be instituted for recovery of county funds wrongfully disbursed." 248 Ala. at 54, 26 So.2d at 255.
Walker County petitioned for permission to intervene in the matter, to which the State demurred. The trial court sustained the demurrer and dismissed Walker County's petition. Walker County then appealed. On appeal, this Court noted that, at one time, "the state could not sue to recover funds of the county illegally disbursed, because there was no statute corresponding with" Title 7, § 73, and that previous versions of Title 55, § 169, allowed "the solicitor," but not the attorney general, to institute such suits. 248 Ala. at 54, 26 So.2d at 255. Those Code sections, the Court held, were
"intended to confer authority on the governor and on the attorney general to cause actions to be instituted in the name of the state or county as the case might be, to recover funds illegally withdrawn, so that such suits might not be prevented or handicapped by local influence or embarrassment. In other words, the foregoing statutes provide a plan for central law enforcement, removed as much as possible from local feeling and interference."
Id. This Court further noted that the "intention of the Legislature" in enacting those Code sections was "to place suits of this character solely in the hands of the central authorities." 248 Ala. at 55, 26 So.2d at 255.
The petitioners contend that this Court in Walker County construed the predecessor to § 6-5-4(a) to give the governor the sole power under that Code section to file *1202 an action to recover public funds lost by the neglect or default of, or wrongful expenditure by, a public officer; thus, they maintain, the County lacks "standing" to pursue the instant action. However, the petitioners read too much into this Court's decision in Walker County. This Court's opinion in that case does not state that counties lack standing to file actions to recover funds lost because of the wrongdoing of county officials.
Instead, the Walker County Court noted only that, although the State once did not have the ability to file an action "to recover funds of the county illegally disbursed," after the enactment of a predecessor to § 6-5-4(a), the governor (as well as the attorney general under Title 55, § 169) was authorized to file such an action. Caselaw predating Walker County, we note, acknowledged that counties had filed such actions. See, e.g., Covington County v. O'Neal, 239 Ala. 322, 195 So. 234 (1939) (in which a county sued the surety of a former county treasurer to recover money lost to the county by the alleged devastavit of the treasurer), and Mobile County v. Williams, 180 Ala. 639, 649, 61 So. 963, 967 (1913) (holding that "when a public officer collects money from a county, as fees or compensation for services rendered by him, and to which fees or compensation he is not legally entitled, such county can maintain a suit for the recovery of the money so illegally obtained by him and recover the same"). Nothing in Walker County indicates that that practice was to be altered.
Furthermore, the language in Walker County must be viewed in the context of the facts and the holding of that case: that the trial court did not err in denying Walker County permission to intervene. This point is illustrated by this Court's rejection of one ground of the State's demurrer, in which the State argued that because Walker County would receive the benefits of any recovery Walker County was already essentially a party to the suit. This Court disagreed, stating that "the mere fact that the suit is brought by the state for the benefit of Walker County, will not preclude Walker County in its own right from also being made a party." 248 Ala. at 54, 26 So.2d at 254. Instead, this Court affirmed the trial court's refusal to grant permission to intervene because Title 7, § 73, and Title 55, § 169, isolated such suits "from local influence or embarrassment." Those Code sections "provide[d] a plan for central law enforcement" and removed the suits from "local feeling and interference." 248 Ala. at 54, 26 So.2d at 254. Although it was argued that Walker County should be allowed to intervene because its presence would not interfere in the action, this Court held that the purpose of this statutory system was "to get away from local influence or interference" and to prevent the action from being "jeopardized by allowing the county to intervene." 248 Ala. at 54-55, 26 So.2d at 255. Allowing Walker County to intervene would thus have been contrary to the legislature's intent to "place suits of this character solely in the hands of the central authorities." 248 Ala. at 55, 26 So.2d at 255. In other words, the trial court's decision to deny Walker County leave to participate in the action was supported by the policy of the Code sections: to give the governor or attorney general the authority to file such actions and to remove the actions from local interference. This Court did not hold that those Code sections denied counties standing to pursue such actions.
To broadly read Walker County to hold as the petitioners suggestthat § 6-5-4(a) places the power to file an action like *1203 the underlying action exclusively in the hands of the governorwould be inconsistent with both the plain language of § 6-5-4(a) and the specific factual and legal basis for the decision in Walker County. Indeed, no authority is cited indicating that Walker County has ever been interpreted in the fashion advanced by the petitioners. Although § 6-5-4(a) may have conferred on the governor the authority to file the instant action, the governor has not done so, and nothing in the text of § 6-5-4(a) suggests that the County has been stripped of its own authority under § 11-1-2 to file an action. Because the petitioners have failed to demonstrate a clear legal right to the relief sought, the petitions are due to be denied.
1091224PETITION DENIED.
1091288PETITION DENIED.
COBB, C.J., and STUART and PARKER, JJ., and MADDOX and SMITH, Special Justices,[*] concur.
WOODALL, BOLIN, MURDOCK, MAIN, and WISE, JJ., recuse themselves.
NOTES
[1] There is some dispute in the arguments submitted to this Court with these petitions as to whether § 6-5-4 actually applies in this case; however, for purposes of this opinion, we assume that it does.
[2] Indeed, § 6-5-4(f), which states that a trial court "shall have full power to make any and all such orders in reference to any other action which may be pending on the same claim or demand against any one or more of the defendants as justice may require," appears to anticipate that other actions on the same claim may exist.
[3] The language of Title 55, § 169, Code of Alabama 1940, was similar to what is now codified at Ala.Code 1975, § 41-5-22. It stated:

"If the defaulting officer fails to settle or to show just cause why the amount should not be collected, the examiner must certify such facts to the department of finance, who shall notify the attorney general of the amount due the state, and the attorney general shall bring suit in the name of the State of Alabama against said officer and his bondsmen. If the amount due by said officer is in favor of the county, then the examiner shall certify to the solicitor of the circuit, or other court having jurisdiction, the amount or amounts so due, and such solicitor shall proceed to collect the same by suit against the officer and his bondsmen. For this additional service solicitors shall receive ten percent of the amounts collected, to be paid out of the county treasury immediately."
[*] Retired Associate Justices Hugh Maddox and Patricia Smith were appointed on March 31, 2011, to be Special Justices in regard to these petitions.